RUY N. DELGADO ZAYAS, ETC., demandante y recurrido, *v.* HOSPITAL INTERAMERICANO DE MEDICINA AVANZADA, demandado y peticionario.

*Número:* CE-94-149 *Resuelto:* 5 de diciembre de 1994

*Eladio Cartagena Colón*, abogado del demandado y peticionario; *Andrés Espinosa Ramón*, abogado del demandante y recurrido.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

Mediante un recurso de *certiorari* comparece ante nos el Hospital Interamericano de Medicina Avanzada (en adelante Hospital) y solicita la revocación de una sentencia del Tribunal Superior, que confirma una orden del Tribunal de Distrito para obligar al demandado peticionario a que pa-

gue al Sr. Lino Álvarez Alvarado la suma de mil trece dólares ($1,013) por concepto de indemnización por despido injustificado. El 9 de mayo de 1994 emitimos una resolución en la cual concedimos al demandante recurrido un término de veinte (20) días para que compareciera por escrito y mostrara causa por la cual no debía revocarse la sentencia dictada por el Tribunal Superior. Revocamos.

## I

Lino Álvarez Alvarado comenzó a trabajar para el Hospital el 15 de noviembre de 1988. Se le contrató como trabajador de servicios de alimentos, y a partir del 21 de diciembre ocupó la posición de cocinero. Álvarez fue despedido el 18 de mayo de 1990, luego de que el Hospital llevara a cabo una investigación de su conducta y concluyera que éste había hostigado sexualmente a Damaris Pagán, su supervisora.

Los hechos que provocaron la investigación y posterior suspensión sumaria y el despido de Álvarez fueron los siguientes.

Damaris Pagán, quien estaba a cargo del Departamento de Dietas del Hospital, testificó que a la fecha de los hechos tenía bajo su supervisión a Álvarez. Pagán declaró que mientras se encontraba en el área de la cocina, que ella supervisaba, recibió una invitación de parte de Álvarez para asistir juntos al Festival de las Flores de Aibonito. Ella la rechazó.

Algún tiempo después de esta invitación, Álvarez le impidió y bloqueó físicamente la salida de los baños a Pagán, con las manos puestas en los marcos de la puerta, a la vez que le requirió que saliera con él. En ese momento, ella le comunicó a Álvarez su disgusto con su actuación de impedirle la salida del baño y procedió a notificarle el incidente a la Supervisora de Dietas del Hospital. La querella de Pagán a su supervisora dio comienzo a una investigación

de la conducta de Álvarez que resultó en una suspensión sumaria y el despido.

Álvarez, a su vez, declaró que invitó a Pagán a salir en dos (2) ocasiones en ánimo de socializar fuera de horas laborables y la invitó a salir porque le gustaba como mujer y quería relacionarse con ésta.

El Secretario del Trabajo y Recursos Humanos presentó una querella en representación y en beneficio de Álvarez contra el Hospital, para reclamar una indemnización por despido injustificado. Luego de que el Hospital contestó la querella y de otros trámites procesales, se procedió con la vista en sus méritos en el Tribunal de Distrito.(1)

Según la resolución del Tribunal de Distrito que contiene la exposición narrativa de la prueba, en la vista se estipuló que el Hospital tiene unas normas estrictas que prohíben el hostigamiento sexual en el empleo e imponen como sanción el despido inmediato del hostigador. Dicho reglamento adopta la definición de lo que constituye hostigamiento sexual, según lo define la Ley de Hostigamiento Sexual en el Empleo, Ley Núm. 17 de 22 de abril de 1988 (29 L.P.R.A. secs. 155–155l). Se estipuló, además, que el Hospital ha dado a conocer las normas que prohíben el hostigamiento sexual y que Álvarez conocía las normas existentes. Para rebatir la presunción de despido injustificado el Hospital presentó prueba de que el señor Álvarez había violado el reglamento de hostigamiento sexual.

El Tribunal de Distrito concluyó que la conducta de Álvarez no constituía una violación tan grave de las normas del Hospital a los efectos de despedirlo a la primera ofensa. Como resultado de esta determinación, el tribunal le impuso la obligación al Hospital de satisfacer a Álvarez la suma de mil trece dólares ($1,013) como indemnización por su despido injustificado. El Hospital solicitó al Tribunal Superior la revisión de dicha sentencia. Dicho tribunal

---

(1) El Hospital presentó a Damaris Pagán como testigo y el señor Álvarez testificó a su favor.

confirmó la decisión emitida por el Tribunal de Distrito luego de determinar que los hechos probados en el caso no constituyeron hostigamiento sexual de acuerdo con nuestro derecho positivo.

Oportunamente el Hospital presentó un recurso de *certiorari* en el cual sostiene que erró el foro de instancia en la apreciación de la prueba al concluir que no medió justa causa para el despido. En su recurso, el Hospital alega que hubo justa causa para el despido ya que el empleado violó el reglamento contra el hostigamiento sexual. Argumenta que el empleado violó su reglamento al incurrir en conducta sexual no deseada y crear así un ambiente hostil de trabajo para su supervisora. El Hospital plantea, además, que dicho foro se equivocó al resolver que las invitaciones a salir de parte de Álvarez no constituían un hostigamiento sexual, según lo define la Ley de Hostigamiento Sexual en el Empleo, definición que adoptó en su reglamento, y al determinar que la conducta del señor Álvarez no fue tan grave como para despedirlo.

Concedimos al Secretario del Trabajo y Recursos Humanos un término para que compareciera por escrito y mostrara causa por la cual no debía revocarse la sentencia del Tribunal Superior. En su escrito dicho Secretario alega que la conducta del empleado no violó el reglamento del Hospital, pues su conducta no constituye hostigamiento sexual en la modalidad de ambiente hostil. Luego de analizar el escrito en cumplimiento de orden presentado por el Secretario del Trabajo y Recursos Humanos, procedemos según el curso decisorio antes intimado.

II

■ El Art. 1 de la Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. sec. 185a) establece que todo empleado de comercio, industria o cualquier otro negocio o sitio de empleo, que sea despedido de su cargo sin que haya mediado una

causa justa, tendrá derecho a recibir de su patrono, además del sueldo que haya devengado, el salario correspondiente a un (1) mes por concepto de indemnización y una indemnización progresiva adicional equivalente a una (1) semana por cada año de servicio.

■ El Art. 2 de la misma Ley Núm. 80 (29 L.P.R.A. sec. 185b) expone lo que se entenderá como justa causa para el despido.(²) En *Srio. del Trabajo v. I.T.T.*, 108 D.P.R. 536, 542 (1979), interpretamos esta disposición y establecimos que "la [l]ey no pretende ni puede ... ser un código de conducta conteniendo una lista de faltas claramente definidas y la sanción que corresponde a cada una y en cada instancia, si ha de ser reprimenda, suspensión o despido. Esa es opción del patrono que puede adoptar reglas y reglamentos razonables que estime necesarios para el buen funcionamiento de la empresa". (Escolio y énfasis suprimidos.)

■ También expusimos que aunque la citada Ley Núm. 80 no favorece el despido como sanción a la primera falta, considera una sola ofensa o primera falta como justa causa si por su gravedad y su potencial de agravio pone en riesgo el orden, la seguridad o la eficiencia que constituyen el funcionamiento normal del establecimiento. *Srio. del*

---

(²) "(a) Que el obrero siga un patrón de conducta impropia o desordenada.

"(b) La actitud del empleado de no rendir su trabajo en forma eficiente o de hacerlo tardía y negligentemente o en violación de las normas de calidad del producto que se produce o maneja por el establecimiento.

"(c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidas para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.

"(d) Cierre total, temporero o parcial de las operaciones del establecimiento.

"(e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios de los servicios rendidos al público.

"(f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido.

"No se considerará despido por justa causa aquel que se hace por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento." En lo pertinente, Art. 2 de la Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. sec. 185b).

*Trabajo v. I.T.T.*, supra, pág. 543. Reiteramos que la Ley Núm. 80, *supra*, permite que, en un caso de falta única por parte del empleado, el patrono le imponga como sanción el despido, siempre y cuando las circunstancias del caso no reflejen una decisión arbitraria o caprichosa.

Por último, establecimos con claridad que la falta o el acto aislado que dé lugar al despido del empleado en primera ofensa tiene que ser "de tal seriedad o naturaleza que revele una actitud o un detalle de su carácter, tan lesivo a la paz y al buen orden de la empresa, que constituiría imprudencia esperar su reiteración para separarlo del establecimiento". *Srio. del Trabajo v. I.T.T.*, supra, pág. 544.

■ Por otro lado, el Art. 8 de la Ley Núm. 80 (29 L.P.R.A. sec. 185h) crea una presunción de que el despido del empleado fue injustificado. Le toca al patrono rebatir dicha presunción. Si el patrono opone como defensa afirmativa haber mediado justa causa para el despido, le corresponde probar, mediante la preponderancia de la evidencia, que el despido estuvo justificado. *Rivera Águila v. K-Mart de P.R.*, 123 D.P.R. 599, 610 (1989); *Srio. del Trabajo v. I.T.T.*, supra.

### III

Debido a que las alegaciones del patrono y del empleado se fundamentan en la definición de hostigamiento sexual en su modalidad de ambiente hostil según lo expone la Ley de Hostigamiento Sexual en el Empleo, es necesario que entremos brevemente en la discusión de los principios legales sobre el hostigamiento sexual.

El Art. II, Sec. 1 de la Constitución del E.L.A., L.P.R.A., Tomo 1, ed. 1982, pág. 257, expone que la dignidad del ser humano es inviolable, que todos los hombres son iguales ante la ley, y añade que:

... [N]o podrá establecerse discrimen alguno por motivo de raza, color, sexo, nacimiento, origen o condición social, ni ideas políticas o religiosas. Tanto las leyes como el sistema de instrucción pública encarnarán estos principios de esencial igualdad humana.

La Ley Núm. 100 de 30 de junio de 1959 (29 L.P.R.A. secs. 146–151) recogió dichos preceptos constitucionales en el ámbito obrero-patronal. Dicha ley prohíbe el discrimen en el empleo por razón de edad, raza, color, sexo, origen social o nacional, condición social e ideas políticas o religiosas.

En *Rodríguez Meléndez v. Sup. Amigo, Inc.*, 126 D.P.R. 117 (1990), expusimos que el hostigamiento sexual constituye una modalidad del discrimen por razón de sexo proscrito por la Ley Núm. 100, *supra*. No obstante, en 1988 la Asamblea Legislativa de Puerto Rico aprobó la Ley de Hostigamiento Sexual en el Empleo, Ley Núm. 17, *supra*, que, en lo pertinente, "declara como política pública del Estado Libre Asociado que el hostigamiento sexual en el empleo es una forma de discrimen por razón de sexo y como tal constituye una práctica ilegal e indeseable que atenta contra el principio constitucional establecido de que la dignidad del ser humano es inviolable". 29 L.P.R.A. sec. 155. La Asamblea Legislativa expresó su intención de prohibir el hostigamiento sexual en el empleo en todas sus modalidades e imponer responsabilidades y fijar penalidades.

El estatuto responsabiliza al patrono tanto por sus actos de hostigamiento como por los de sus supervisores o agentes, independientemente de si la actuación que originó la reclamación fue autorizada o prohibida por el patrono. 29 L.P.R.A. sec. 155d. Además, responsabiliza al patrono por los actos de hostigamiento "entre empleados en el lugar de trabajo si el patrono o sus agentes o sus supervisores sabían o debían estar enterados de dicha conducta, a menos que el patrono pruebe que tomó una acción inme-

diata y apropiada para corregir la situación". 29 L.P.R.A. sec. 155e.

■ Un elemento fundamental de esta ley es que le impone al patrono la responsabilidad afirmativa en la prevención, prohibición y erradicación del hostigamiento sexual en el empleo. El Art. 10 de la Ley Núm. 80, *supra*, 29 L.P.R.A. sec. 155i, le exige al patrono que exponga de una forma clara su política contra el hostigamiento sexual entre sus supervisores y empleados, para así proteger su dignidad y garantizar que el ambiente en su lugar de empleo sea seguro. Para cumplir con la obligación de prevenir, desalentar y evitar el hostigamiento sexual en el empleo, la ley le impone al patrono el deber de mantener el lugar de trabajo libre de hostigamiento e intimidación y, en particular, tomar ciertas medidas, que incluyen, pero no se limitan a, las siguientes:

(a) Expresar claramente a sus supervisores y empleados que el patrono tiene una política enérgica contra el hostigamiento sexual en el empleo.

(b) Poner en práctica los métodos necesarios para crear conciencia y dar a conocer la prohibición del hostigamiento sexual en el empleo.

(c) Dar suficiente publicidad en el lugar de trabajo, para los aspirantes a empleo, de los derechos y protección que se les confieren y otorgan ....

(d) Establecer un procedimiento interno adecuado y efectivo para atender querellas de hostigamiento sexual. 29 L.P.R.A. sec. 155i.

■ El Art. 3 de la Ley Núm. 80, *supra*, 29 L.P.R.A. sec. 155b, define el hostigamiento sexual en el empleo como cualquier tipo de acercamiento sexual no deseado, requerimientos de favores sexuales y cualquier otra conducta verbal o física de naturaleza sexual, cuando se da una o más de las circunstancias siguientes:

(a) Cuando el someterse a dicha conducta se convierte de forma implícita o explícita en un término o condición del empleo de una persona.

(b) Cuando el sometimiento o rechazo a dicha conducta por parte de la persona se convierte en fundamento para la toma de decisiones en el empleo o respecto del empleo que afectan a esa persona.

(c) Cuando esa conducta tiene el efecto o propósito de interferir de manera irrazonable con el desempeño del trabajo de esa persona o cuando crea un ambiente de trabajo intimidante, hostil u ofensivo. 29 L.P.R.A. sec. 155b.

Los incisos (a) y (b) de este artículo se refieren al tipo de hostigamiento equivalente quid pro quo (algo a cambio de algo). En la modalidad quid pro quo, los patronos acondicionan las oportunidades y los beneficios del empleado a cambio de favores sexuales.

El inciso (c) se refiere al hostigamiento sexual que cree un ambiente hostil o intimidante. En esta modalidad el empleado, independientemente de la posición que ocupa en el empleo, trabaja en un ambiente ofensivo o abusivo. En otras palabras, cualquier empleado —sin importar su posición en el lugar de empleo— puede crear un ambiente hostil. *Ellison v. Brady*, 924 F.2d 872 (9no Cir. 1991).

En el ámbito federal, el Título VII de la Ley Federal de Derechos Civiles de 1964 (42 U.S.C. secs. 2000e(1)–2000e(17)) presenta un ordenamiento que prohíbe la utilización de prácticas discriminatorias en el empleo contra cualquier individuo por razón de su raza, color, religión, origen nacional y sexo.

En *Meritor Savings Bank v. Vinson*, 477 U.S. 57 (1986), el Tribunal Supremo federal concluyó que un demandante puede incoar una acción por violación del Título VII al probar que el discrimen por razón de sexo ha creado un ambiente de trabajo abusivo y hostil. El Título VII no está limitado al discrimen económico o tangible. Por tal razón, no es necesario que un demandante demuestre que el hostigamiento alegado haya ocasionado un efecto económico negativo en su empleo. Basta que se haya creado un ambiente hostil de trabajo mediante la conducta del alegado hostigador. Estableció, además, que no todo tipo de

conducta o lenguaje es suficiente para sostener una alegación de hostigamiento sexual por la creación de un ambiente hostil. Dicho hostigamiento debe ser lo suficientemente severo como para alterar las condiciones de empleo y crear un ambiente de trabajo desfavorable para la víctima.[3]

Recientemente, en *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), el Supremo federal reiteró y clarificó el estándar emitido en *Meritor Savings Bank v. Vinson*, supra, sobre qué constituye un ambiente hostil y abusivo. Al así hacerlo, adoptó una posición intermedia entre hacer procesable cualquier conducta que sea meramente ofensiva y requerir que la conducta haya causado un daño sicológico tangible. En otras palabras, la Corte Suprema federal aclaró que para que un empleado pueda establecer un caso prima facie de hostigamiento sexual por ambiente hostil no tiene que probar que sufrió un daño sicológico. El Título VII entra en vigor antes de que la conducta hostigadora resulte en el colapso nervioso de la víctima.

Un ambiente hostil e intimidante, aunque no afecte seriamente el bienestar sicológico de la víctima, puede afectar el funcionamiento y la efectividad de la víctima en el empleo, desalentar al empleado a permanecer en el empleo y dificultarle el progreso en su carrera. Si el ambiente puede ser razonablemente percibido como hostil y en efecto es percibido por la víctima como un ambiente hostil o abusivo o que atente contra su dignidad, no hay necesidad de que también sea sicológicamente dañino. *Harris v. Forklift*, supra.

 El Tribunal Supremo federal concluyó que la determinación de si un ambiente es hostil o abusivo sólo se puede hacer mediante el análisis de todas las circunstan-

---

[3] En *Rodríguez Meléndez v. Sup. Amigo, Inc.*, 126 D.P.R. 117 (1990), adoptamos este criterio expuesto por el Tribunal Supremo federal en *Meritor Savings Bank v. Vinson*, 477 U.S. 57 (1986).

cias del caso. Estas circunstancias pueden incluir la frecuencia de la conducta discriminatoria, su severidad, si es físicamente intimidante o humillante y si interfiere de manera irrazonable con el funcionamiento del empleado en su trabajo. Se puede tomar en cuenta el daño sicológico sufrido como cualquier otro factor relevante, pero no hay un solo factor que sea requerido. *Harris v. Forklift Systems, Inc.*, supra.

Éste no es, y por su naturaleza no puede ser, un examen con precisión matemática, por esto la opinión elaboró un estándar que tome en cuenta la hostilidad del ambiente de trabajo desde la vertiente subjetiva de la víctima y desde la vertiente objetiva de una persona razonable.[4]

La opinión que hoy emitimos en ninguna forma varía el estándar de prueba que tiene que presentar un patrono para rebatir la presunción de despido injustificado. Para rebatir dicha presunción el patrono puede presentar como defensa afirmativa la prueba que establezca, mediante la preponderancia de la evidencia, que hubo justa causa para el despido. Pasemos a examinar los hechos del caso de autos para determinar si el patrono rebatió la presunción antedicha.

## IV

En el caso de autos, la controversia que ha de resolverse es si la actuación de un empleado, que violó las normas del patrono al incurrir en un acercamiento sexual no deseado, constituye justa causa para el despido.

---

[4] En *Ellison v. Brady*, 924 F.2d 872 (9no Cir. 1991), la Corte fue más allá que el Tribunal Supremo federal en *Harris v. Forklift Systems, Inc.*, 126 L.Ed.2d 295, 510 U.S. 17 (1993), al establecer que en la evaluación de la severidad de la conducta del hostigador —en los casos de hostigamiento sexual en su modalidad de ambiente hostil— el enfoque debe de ser en la perspectiva de la mujer razonable. La Corte señaló que los tribunales deben de considerar la perspectiva de la víctima y no las nociones estereotipadas de lo que constituye un comportamiento aceptable. Además, sostuvo que este estándar de la víctima razonable puede clasificar como hostigamiento sexual una conducta aunque el hostigador no considere que su comportamiento creó un ambiente hostil e intimidante.

Damaris Pagán estaba a cargo del Departamento de Dietas del Hospital y tenía bajo su supervisión a Lino Álvarez, quien era cocinero. Pagán testificó que, mientras estaban en el área de la cocina, Álvarez la invitó a ir con él al Festival de las Flores de Aibonito. Ella le rechazó la invitación. Luego, algún tiempo después, Álvarez le bloqueó la salida del baño, poniendo las manos en los marcos de la puerta y le exigió que saliera con él. Pagán rechazó el requerimiento y le comunicó su desagrado con su actuación de intimidarla al impedirle la salida.

Un análisis objetivo de las circunstancias en el caso de marras nos lleva a concluir que la acción de Álvarez de impedirle la salida de los baños a su supervisora, a la vez que le requería que saliera con él, constituye un acercamiento sexual no deseado y, además, humillante, físicamente amenazante e intimidante. Mediante su acción de restringirle la libertad a Pagán, Álvarez interfirió irrazonablemente con el funcionamiento de ésta en su puesto de supervisora al menospreciar y retar su autoridad.

Subjetivamente, Pagán percibió que el ambiente en su área de trabajo se tornó hostil y abusivo como consecuencia del incidente en el baño con Álvarez. Prueba de esto es que, luego de que Álvarez le impidiera la salida, ella se querelló ante su supervisora. El Hospital procedió a investigar la querella de Pagán y concluyó que, según sus normas, hubo hostigamiento sexual, y la sanción para el hostigamiento era el despido.

En la contestación a la orden de mostrar causa, el Secretario del Trabajo y Recursos Humanos, en representación de Álvarez, alega que la citada Ley Núm. 80 no favorece el despido a la primera falta de un empleado y que la acción de Álvarez no era del tipo que por su gravedad pone en riesgo el orden, la seguridad y la eficiencia, que constituyen la normalidad operatoria del establecimiento; que, por lo tanto, no hubo justa causa para el despido. No tiene razón.

En el caso de marras, el despido de Álvarez no fue por un capricho del patrono; todo lo contrario. El Hospital, al responder a la política pública del E.L.A. contra el hostigamiento sexual, creó unas reglas razonables y estrictas para prohibir el hostigamiento en su establecimiento. Así lo estipularon las partes ante el foro de instancia.

Según consta de la resolución del Tribunal de Distrito que contiene la exposición narrativa de la prueba, las partes también estipularon que el Hospital dio a conocer la norma que prohíbe el hostigamiento sexual, que Álvarez conocía estas reglas y que sabía que el despido era el castigo para una primera violación. Aunque conocía este reglamento tan estricto, Álvarez le faltó el respeto a su supervisora, la humilló y la intimidó físicamente al restringirle su libertad cuando le impidió la salida del baño mientras le requería que saliera con él. El Hospital determinó que esta conducta constituía un hostigamiento sexual en la modalidad de ambiente hostil, según la definición de hostigamiento sexual adoptada en el reglamento de la Ley de Hostigamiento Sexual en el Empleo.

El patrono no podía esperar a que se reiterara la conducta deplorable de Álvarez para entonces despedirlo, ya que su conducta era claramente lesiva a la paz y al funcionamiento normal del Hospital. El incidente único de impedirle la salida a su supervisora, mientras le requería salir con él, fue de tal seriedad que puso en peligro el orden en la empresa. Por lo tanto, el despido a la primera violación del reglamento estuvo justificado siguiendo la norma expuesta en *Srio. del Trabajo v. I.T.T.*, supra.

Hubiese sido una imprudencia del Hospital no tomar acción inmediata contra Álvarez. Además, no estaría cumpliendo con la responsabilidad que le impone la Ley de Hostigamiento Sexual en el Empleo a los patronos de prohibir el hostigamiento sexual entre empleados en el lugar de trabajo y de tomar una "acción inmediata y apropiada para corregir la situación". 29 L.P.R.A. sec. 155e. Conclui-

mos que en el caso de autos hubo justa causa para el despido y que el patrono actuó correctamente al destituir a Álvarez, una vez realizada la investigación solicitada por la víctima del hostigamiento, y tomar acciones enérgicas para corregir la situación y desalentar en el futuro cualquier conducta impropia entre empleados.

■ Es política pública del Estado Libre Asociado erradicar el hostigamiento sexual del lugar de empleo. La ley de hostigamiento le impone al patrono el deber de tomar las medidas necesarias para prevenir, desalentar y evitar el hostigamiento sexual en el empleo. El patrono tiene un deber afirmativo de adoptar una política para eliminar el hostigamiento sexual en su negocio o empresa. Sin embargo, la ley de hostigamiento sexual no recomienda que los patronos adopten un reglamento en particular para cumplir con el propósito de la ley, sino que les da unas guías mínimas para que, a su discreción, adopten una política efectiva en contra el hostigamiento. Corresponde a cada patrono, a la luz de sus circunstancias particulares, tomar las medidas cautelares que sean necesarias para evitar con efectividad el hostigamiento sexual en sus talleres de trabajo.

Por otro lado, la Ley Núm. 80 en su Art. 2, *supra*, exige que las reglas y los reglamentos que establezcan los patronos para el funcionamiento de la empresa sean razonables. El Hospital en este caso cumplió con el ordenamiento aplicable, pues adoptó una política razonable y efectiva contra el hostigamiento. Esto no significa que en todos los otros talleres de empleo se le requerirá a los patronos el mismo tipo de medidas disciplinarias para cumplir con nuestro ordenamiento.

El tribunal de instancia erró en su apreciación de la prueba y en la aplicación del derecho al concluir que no hubo justa causa para el despido. El Hospital cumplió con su deber de rebatir la presunción de despido injustificado al traer como defensa afirmativa y probar por preponde-

rancia de la evidencia que el señor Álvarez violó el reglamento al incurrir en un acercamiento sexual no deseado y crear un ambiente hostil para la señorita Pagán y violar así sus normas contra el hostigamiento sexual en el empleo. Conforme con la política pública del Estado Libre Asociado contra el hostigamiento sexual, en las circunstancias particulares de este caso *determinamos que la violación del reglamento establecido por el patrono para evitar el hostigamiento sexual en el Hospital constituye justa causa para el despido. Por todo lo cual, revocamos.*

El Juez Asociado Señor Negrón García "disintió, concediéndole deferencia a las apreciaciones fácticas y a la aquilatación de la prueba de los testigos conforme las sentencias emitidas por el Tribunal de Distrito y el Tribunal Superior en apelación. El único incidente en que se basó el despido del Sr. Lino Álvarez Alvarado no revela fundamento ni reviste motivo suficiente para su despido sumario". El Juez Asociado Señor Rebollo López emitió una opinión disidente. Los Jueces Asociados Señores Alonso Alonso y Fuster Berlingeri se inhibieron.

— O —

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

Lo resuelto en el día de hoy por una mayoría de los integrantes del Tribunal constituye un precedente, *dañino y peligroso*, en el campo de las relaciones obrero-patronales en Puerto Rico; situación que resulta ser *todavía más lamentable* cuando consideramos el hecho de que la decisión emitida no sólo es errónea *sino que completamente innecesaria.*

La mayoría en el día de hoy, *de un plumazo y posiblemente sin tener consciencia clara de lo que realmente está decidiendo*, establece una *modalidad* del "hostigamiento

sexual" *jamás concebida* por la legislación referente a la materia *ni por* la jurisprudencia interpretativa de la misma.

Es enteramente correcto, como se señala en la opinión mayoritaria, que el Art. 3 de la Ley Núm. 17 de 22 de abril de 1988 (29 L.P.R.A. sec. 155b), conocida como la Ley de Hostigamiento Sexual en el Empleo, define el "hostigamiento" sexual en el lugar de trabajo como cualquier tipo de acercamiento sexual no deseado, requerimientos de favores sexuales, y cualquier otra conducta, verbal o física, de naturaleza sexual, *siempre que estén presente una o más de las siguientes circunstancias o situaciones*:

> (a) Cuando el someterse a dicha conducta se convierte de forma implícita o explícita *en un término o condición del empleo de una persona.*
>
> (b) Cuando el sometimiento o rechazo a dicha conducta por parte de la persona *se convierte en fundamento para la toma de decisiones en el empleo o respecto del empleo que afectan a esa persona.*
>
> (c) Cuando esa conducta tiene el efecto o propósito de interferir de manera irrazonable con el desempeño del trabajo de esa persona *o cuando crea una ambiente de trabajo intimidante, hostil u ofensivo.* (Énfasis suplido.)([1])

Una *somera* lectura de lo arriba transcrito es todo lo que se necesita para poder uno percatarse del hecho *que en las primeras dos (2) circunstancias se parte de la premisa de que la "parte actora" en el, o causante del, hostigamiento sexual es un empleado de mayor jerarquía en la compañía que la víctima del hostigamiento*; ello es la única manera en que se puede dar el "quid pro quo" requerido en las mismas. En estas dos (2) situaciones *no* constituye defensa de clase alguna el hecho de que la víctima del hostigamiento haya "tolerado" el, o se haya sometido al, hostigamiento por algún período de tiempo. Ello así ya que se entiende, *con razón*, que la víctima lo toleró, o se sometió al

---

([1]) 29 L.P.R.A. sec. 155b.

hostigamiento, debido al hecho de tener *fundado temor de perder su trabajo*, el cual, de ordinario, necesita para su sostenimiento y el de su familia.

No hay duda de que —*en relación con la tercera de las circunstancias o situaciones, esto es, la del "ambiente intimidante, hostil u ofensivo"*— no se parte de la premisa de que el hostigamiento provenga de un empleado de mayor jerarquía hacia uno de menor jerarquía. Esto es, y aun cuando el ambiente hostil e intimidante también puede darse en las primeras dos (2) circunstancias, *esta tercera situación pretende regular la interacción entre empleados de igual jerarquía en el lugar de trabajo.* En relación con la misma, igualmente se acepta que, aun entre empleados de *igual* jerarquía, la víctima del hostigamiento sexual tolere el mismo durante algún tiempo por miedo a perder el empleo. Esta víctima puede entender que el reportar el hostigamiento a sus superiores puede tener la consecuencia de la pérdida de su empleo, ya que puede ser considerado como una persona problemática que no puede funcionar "en equipo".

Ahora bien, *¿consideró el legislador la existencia y ocurrencia del hostigamiento sexual en el empleo cuando la alegada víctima del mismo es un empleado de mayor jerarquía que el victimario?* Esto es, ¿es realmente factible que un empleado de menor jerarquía cause o cree en el empleo, respecto a un empleado de superior categoría, un ambiente de trabajo hostil, intimidante y ofensivo durante algún período de tiempo?

Aceptamos, *naturalmente*, que un empleado de *menor* jerarquía le pueda faltar el respeto a, y herir la dignidad de, un empleado de *superior* categoría mediante avances de índole sexual. *Igualmente aceptamos* que dicha actuación sea considerada como "justa causa", bajo la Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. secs. 185a–185m), *para despedir sumariamente a ese empleado de la compañía.*

Lo que nos resistimos a aceptar es que se resuelva que esos avances —*de un subordinado a un superior*— puedan, *de ordinario*, causar un *ambiente* de intimidación y hostilidad en el empleo. Como es sabido, "ambiente de hostigamiento sexual" constituye unas "condiciones existentes", una "atmósfera", que se crea por la conducta, *repetitiva e insistente*, de una persona a esos efectos. *No podemos perder de vista que está en manos de ese empleado de superior jerarquía tomar, de manera inmediata, las medidas pertinentes para que ese subordinado suyo sea inmediatamente suspendido o cesanteado en su empleo; evitando con ello, precisamente, la creación de un ambiente hostil e intimidante en el lugar del trabajo.*

*En primer lugar,* no hay razón alguna para que el empleado de superior jerarquía tolere, por un minuto, esa conducta y no lo reporte al cuadro directivo de la compañía. Ello así ya que *no* hay razón de clase alguna, en esa situación específica de hechos, para que el supervisor piense, o tema, que puede perder su empleo al reportar la conducta ofensiva. *En segundo término*, la creación de un ambiente hostil e intimidante en el empleo *requiere, por definición y de ordinario, que transcurra cierto período de tiempo durante el cual la conducta intimidante, con connotación sexual, se repita.*(²) Esto es, *no* se crea un "ambiente hostil e intimidante" en el empleo en un segundo, minuto, o día. *No* existiendo razón alguna para tolerar ni por un minuto la conducta ofensiva, repetimos, *no existe impedimento de clase alguno por el cual el supervisor no pueda tomar la acción correctiva inmediata y, con su acción de sancionar o cesantear al subordinado, precisamente evitar la creación de un ambiente hostil e intimidante en el lugar de trabajo.*

En el presente caso, el alegado hostigamiento sexual ocurrido consistió, *conforme expresa la mayoría, de dos (2)*

---

(²) Aceptamos, sin embargo, que una sola ocasión podría bastar; esto es, en caso de una actuación que sea patentemente ofensiva desde un punto de vista sexual.

acciones de parte del subordinado hacia su supervisora. En *primer* lugar, la supervisora "recibió una invitación de parte de [Álvarez] para asistir juntos al Festival de las Flores en Aibonito" (Sentencia de 25 de enero de 1994, pág. 2); la cual invitación la supervisora rechazó. No obstante los esfuerzos mentales que hemos hecho, no alcanzamos a comprender cómo una sencilla, y aparentemente respetuosa, invitación verbal a asistir al mencionado Festival puede ser considerada como un acto de hostigamiento sexual. En *segundo* término —*y ésta sí constituyó conducta ofensiva reprobable*— "algún tiempo después", el referido empleado "le impidió y bloqueó físicamente la salida de los baños [a la supervisora], con las manos puestas en los marcos de las puertas, [a la vez que le requirió que saliera con él]". Íd.

Aceptamos que dicha conducta constituye suficiente *justa causa* para el *despido decretado* o, cuando menos, para la *imposición de una severa sanción* al empleado. *Así se hizo inmediatamente por el patrono, luego de que la supervisora le reportara dicha conducta.*

*Procede que nos preguntemos*: ¿se creó un ambiente hostil e intimidante en el lugar de trabajo que constituyera hostigamiento sexual? La contestación en la *negativa* parece ser obvia. *No* se creó ninguna clase de ambiente. *Tan pronto el empleado incurrió en conducta reprobable, el patrono lo despidió.*

El presente caso —el cual plantea una sencilla controversia respecto a la existencia, o no, de "justa causa" para despedir un empleado de su empleo— *ha sido convertido* por el Tribunal, *innecesariamente*, en un alegado caso de hostigamiento sexual en el empleo; *creando así un peligroso precedente en el campo de las relaciones obrero-patronales que puede llevar a la innecesaria imposición de responsabilidad civil a los patronos en Puerto Rico.* La realidad es que la mayoría *no* cesa de sorprendernos con las decisiones que emite.