Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| ÁNGEL L. CARDONA SÁEZ<br><br>*Recurrido*<br><br>v.<br><br>OFICINA DEL CONTRALOR DE PUERTO RICO<br><br>*Recurrente* | KLRA202300587 | Revisión Administrativa procedente de la Junta de Apelaciones de la Oficina del Contralor de Puerto Rico<br><br>Caso Núm.:<br>A-21-02<br><br>Sobre:<br>Apelación sobre insubordinación y suspensión de empleo y sueldo |
|---|---|---|

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 5 de febrero de 2024.

Comparece la Oficina del Contralor de Puerto Rico (OCPR o recurrente) mediante *Recurso de Revisión Administrativa* y nos solicita la revocación de la *Resolución Final*[1] emitida y notificada el 5 de julio de 2023, por la Junta de Apelaciones de la Oficina del Contralor (Junta de Apelaciones). En virtud de dicha determinación, la Junta de Apelaciones ordenó sustituir la medida disciplinaria impuesta por la OCPR, por otra medida disciplinaria que, a su juicio, era la más adecuada en el caso.

Por los fundamentos que expresamos a continuación, **confirmamos** la *Resolución Final* recurrida.

### I.

Según surge del expediente ante nuestra consideración, para principios del mes de marzo de 2021, los sistemas de información

---

[1] Apéndice del *Recurso de Revisión Administrativa*, págs. 1- 10.

de la OCPR fueron objeto de un ataque cibernético[2], lo que ocasionó el cierre de labores por espacio de dos (2) semanas.

Así las cosas, la Contralora, Honorable Yesmín M. Valdivieso Galib (Contralora), instruyó sobre la forma en que se registraría la asistencia de los empleados durante el periodo que estuvieron sin trabajar. Dichas instrucciones fueron comunicadas a los empleados mediante correo electrónico el 5 de abril de 2021, por la señora Iseut G. Vélez Rivera, Directora de la División de Capital Humano de la Oficina del Contralor de Puerto Rico (Directora). Las instrucciones fueron las siguientes:

- Semana del 15 al 19 de marzo – El registro sería a vacaciones[.]
- Semana del 22 al 26 de marzo – El registro sería a Imprevisto (el 22 es Feriado)[3][.]

No empece a lo anterior, el señor Ángel L. Cardona Sáez (señor Cardona Sáez o recurrido), auditor de la División de Auditoría de Municipios[4], se negó a registrar su asistencia conforme a las instrucciones impartidas. Específicamente, se negó a registrar la asistencia de la semana del 15 al 19 de marzo de 2021 a la licencia con cargo a vacaciones.

El 20 de mayo de 2021, mediante el Memorando OCP-CH-21-559, se le notificó al recurrido la intención de la OCPR de imponerle una medida disciplinaria por insubordinación, al negarse a registrar su asistencia conforme las instrucciones impartidas. Se le apercibió de su derecho a solicitar una vista administrativa informal dentro

---

[2] Véase *Ángel L. Cardona Sáez y otros v. Oficina del Contralor de Puerto Rico*, KLRA202100580, donde se expone un recuento más detallado de los hechos con relación al ataque cibernético a los sistemas de información de la OCPR; así como también, las medidas tomadas para el registro de asistencia durante las dos (2) semanas que la OCPR se vio obligada a cesar labores. En el aludido recurso, los recurrentes cuestionaron la autoridad de la OCPR para cargar una semana a *vacaciones* y otra semana a *imprevisto*. En aquella ocasión, este tribunal confirmó la resolución de la Junta de Apelaciones de la Oficina del Contralor de Puerto Rico, en la cual se había desestimado el recurso por falta de jurisdicción. Posteriormente, se presentó recurso de *certiorari* ante el Tribunal Supremo, el cual, fue declarado No Ha Lugar el 22 de julio de 2022.
[3] Apéndice del *Recurso de Revisión Administrativa*, pág. 40.
[4] A la fecha del ataque cibernético, durante el mes de marzo de 2021, el recurrido se desempeñaba como Presidente de la Asociación de Auditores de la Oficina del Contralor de Puerto Rico.

del término de diez (10) días a partir del recibo del aludido memorando.

El 28 de mayo de 2021, el recurrido solicitó a la Contralora la celebración de una vista, la cual fue señalada para el 9 de junio de 2021. El 11 de junio de 2021, mediante el Memorando OCP-CH-21-581[5], la OCPR notificó al recurrido que basado en el Informe sobre Vista Administrativa Informal, éste no aportó información sustantiva ni documentación alguna en apoyo de su solicitud. Por tal motivo, se le impuso una medida disciplinaria por insubordinación, consistente en la suspensión de empleo y sueldo por tres (3) días laborables[6].

A esos efectos, el 12 de julio de 2021, el recurrido presentó una *Apelación*[7] ante la Junta de Apelaciones. Mediante *Resolución Final*[8] emitida y notificada el 5 de julio de 2023, se declaró No Ha Lugar el recurso de apelación. Empero, la Junta de Apelaciones modificó la medida disciplinaria impuesta por la OCPR, sustituyendo la suspensión de empleo y sueldo, por una amonestación verbal. Consecuentemente, ordenó a la OCPR eliminar del expediente de personal del recurrido la suspensión de empleo y sueldo, así como restituir la cantidad de dinero que este dejó de devengar, más las licencias acumuladas pertinentes.

En desacuerdo con la determinación, el 17 de julio de 2023, la OCPR presentó *Reconsideración*[9] ante la Junta de Apelaciones. El 18 de julio de 2023, la Junta de Apelaciones emitió una *Resolución*[10] acogiendo la reconsideración y concediendo un término de diez (10) días al recurrido para que se expresara. Posteriormente, el 1 de noviembre de 2023 se emitió *Resolución Final Atendiendo Solicitud*

---

[5] Apéndice del *Recurso de Revisión Administrativa*, págs. 50- 51.
[6] La suspensión fue efectiva desde el martes, 15 de junio de 2021, hasta el jueves, 17 de junio de 2021.
[7] Apéndice del *Recurso de Revisión Administrativa*, págs. 43- 49.
[8] Apéndice del *Recurso de Revisión Administrativa*, págs. 1- 10.
[9] Apéndice del *Recurso de Revisión Administrativa*, págs. 11- 27.
[10] Apéndice del *Recurso de Revisión Administrativa*, pág. 28.

*de Reconsideración*[11], en la cual, la Junta de Apelaciones reiteró su dictamen.

Aun inconforme, el 14 de noviembre de 2023, la OCPR acudió ante nos mediante *Recurso de Revisión Administrativa* y señaló la comisión de los siguientes errores:

> La Resolución en Reconsideraci[ó]n fue emitida fuera del término dispuesto por [la] LPAU y [,] por tanto[,] la Junta de Apelaciones hab[í]a perdido jurisdicción sobre el asunto al emitir la misma[.]

> Las determinaciones de hechos no est[á]n sostenidas por el expediente administrativo ni por el testimonio de los testigos en la Vista Administrativa[.]

> Err[ó] la Junta de Apelaciones al resolver que la medida disciplinaria deb[í]a ser una amonestaci[ó]n verbal ya que esa controversia nunca estuvo ante su consideraci[ó]n[.]

Transcurrido en exceso el término dispuesto en nuestro Reglamento para que la parte recurrida presentara su posición, damos por perfeccionado el recurso ante nuestra consideración y procedemos a resolver sin el beneficio de su comparecencia[12].

**II.**

**-A-**

Es norma reiterada que la jurisdicción es el poder o autoridad de un tribunal para considerar y decidir casos y controversias[13]. En atención a ello, las cuestiones sobre jurisdicción son de carácter privilegiado[14]. Ello exige que los tribunales seamos fieles guardianes de nuestra jurisdicción, independientemente el asunto haya sido planteado anteriormente[15]. Además, en nuestro ordenamiento legal la jurisdicción no se presume, pues previo a la consideración en los méritos de un recurso, o una vez cuestionada su jurisdicción, es nuestro deber ministerial evaluar si poseemos jurisdicción, toda vez que ello incide directamente sobre nuestro poder para adjudicar una

---

[11] Apéndice del *Recurso de Revisión Administrativa*, págs. 29- 39.
[12] 4 LPRA Ap. XXII-B, R. 39.
[13] *Rodríguez Rivera v. De León Otaño*, 191 DPR 700, 708 (2014).
[14] *J.P. v. Frente Unido I*, 165 DPR 445, 459 (2005).
[15] *Íd.*

controversia[16]. La ausencia de jurisdicción no es susceptible de ser subsanada, pues las partes ni el tribunal pueden asumirla[17].

**-B-**

Por otro lado, y en lo pertinente a nuestra controversia, la Sección 3.15 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico ("LPAU"), dispone que:

> La parte adversamente afectada por una resolución u orden parcial o final podrá, dentro del término de veinte (20) días desde la fecha de archivo en autos de la notificación de la resolución u orden, presentar una moción de reconsideración de la resolución u orden. La agencia dentro de los quince (15) días de haberse presentado dicha moción deberá considerarla. Si la rechazare de plano o no actuare dentro de los quince (15) días, el término para solicitar revisión comenzará a correr nuevamente desde que se notifique dicha denegatoria o desde que expiren esos quince (15) días, según sea el caso. Si se tomare alguna determinación en su consideración, el término para solicitar revisión empezará a contarse desde la fecha en que se archive en autos una copia de la notificación de la resolución de la agencia resolviendo definitivamente la moción de reconsideración. Tal resolución deberá ser emitida y archivada en autos dentro de los noventa (90) días siguientes a la radicación de la moción de reconsideración. **Si la agencia acoge la moción de reconsideración pero deja de tomar alguna acción con relación a la moción dentro de los noventa (90) días de ésta haber sido radicada, <u>perderá jurisdicción sobre la misma</u>** y el término para solicitar la revisión judicial empezará a contarse a partir de la expiración de dicho término de noventa (90) días salvo que la agencia, por justa causa y dentro de esos noventa (90) días, prorrogue el término para resolver por un período que no excederá de treinta (30) días adicionales[18]. (Énfasis nuestro).

Por otra parte, la Sección 4.2 de la LPAU[19], regula la solicitud de revisión ante este Tribunal. Dicha dispone que:

> Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la [Sección 3.15 de esta Ley], cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración. [...]

---

[16] *Carattini v. Collazo Syst. Analysis, Inc.*, 158 DPR 345 (2003); *Sociedad de Gananciales v. A.F.F.*, 108 DPR 644 (1979).
[17] *González v. Mayagüez Resort & Casino*, 176 DPR 848, 855 (2009); *Vázquez v. A.R.P.E.*, 128 DPR 513, 537 (1991). Véase, además, *Beltrán Cintrón et al v. ELA et al*, 204 DPR 89, 101-102 (2020).
[18] 3 LPRA sec. 9655.
[19] 3 LPRA sec. 9672.

Así pues, de conformidad con la Sección 3.15 de la LPAU, *supra*, una parte adversamente afectada por una resolución de una agencia puede solicitar reconsideración en el término jurisdiccional de veinte (20) días desde el archivo en autos de la resolución u orden que desea revisar. Si la agencia la rechaza de plano o no actúa dentro de quince (15) días de presentada la moción de reconsideración, el término de treinta (30) días para acudir en revisión al Tribunal de Apelaciones comienza a computarse desde que se notifique dicha denegatoria de plano o desde que expiren esos quince (15) días, según sea el caso. Empero, cuando la agencia la acoge o toma alguna determinación, como lo es ordenar a la parte adversa que presente su posición, el término para acudir en alzada no comienza a transcurrir hasta que la agencia resuelva definitivamente la reconsideración solicitada[20]. Tal resolución deberá ser emitida y archivada en autos dentro de los noventa (90) días siguientes a la radicación de la solicitud de reconsideración.

De igual forma, en su quehacer adjudicativo, las agencias administrativas están facultadas para prorrogar el término de noventa (90) días provisto para formular su expresión por un máximo de treinta (30) días adicionales, hasta ciento veinte (120) días, siempre que exista justa causa y se proceda de conformidad dentro del plazo original[21].

A estos efectos, la Sección 3.15 de la LPAU, *supra*, decreta que la agencia administrativa "*perderá jurisdicción*" sobre la reconsideración acogida si no toma alguna acción "*dentro de los noventa (90) días de ésta haber sido radicada*". Del mismo modo, la Sección 3.15 de la LPAU, *supra*, precisa y vincula la jurisdicción de la agencia administrativa a que la resolución sea "*emitida y*

---

[20] *Fonte Elizondo v. F & R Const.*, 196 DPR 353, 359-360. Véase, además, *Asoc. de Cóndomines v. Meadows Dev.*, 190 DPR 843 (2014); *Ortiz v. Adm. Sist. de Retiro Emp. Gob.*, 147 DPR 816, 822-823 (1999).
[21] *Asoc. Condómines v. Meadows Dev., supra*, págs. 849-850.

*archivada en autos*" en el término de noventa (90) días desde que ésta fue radicada[22].

**-C-**

La Ley de la Judicatura del Estado Libre Asociado de Puerto Rico, *supra*, establece la autoridad del Tribunal de Apelaciones para revisar "decisiones, órdenes y resoluciones finales de organismos o agencias administrativas"[23]. Por su parte, la LPAU establece el marco de revisión judicial de estas decisiones[24]. Cónsono con lo anterior, nuestra función revisora se delimita a delinear la discreción de las entidades administrativas para garantizar que sus decisiones se encuentren en el marco de los poderes delegados y sean consecuentes con la política pública que las origina[25].

Debido a la vasta experiencia y conocimiento especializado que tienen las agencias administrativas sobre los asuntos que le son encomendados, los foros revisores les conceden gran consideración y deferencia a sus decisiones[26]. Es por esta razón que la revisión judicial se limita a determinar si la agencia actuó de manera arbitraria o ilegal, o de forma tan irrazonable que sea considerado un abuso de discreción[27]. Hay que señalar que las determinaciones de los organismos administrativos están cobijadas por una presunción de corrección y legalidad que debe respetarse, mientras la parte que las impugne no demuestre con suficiente evidencia que la decisión no está justificada[28].

Así pues, la revisión judicial de una decisión administrativa se circunscribe a determinar si hay evidencia sustancial en el

---

[22] *Fonte Elizondo v. F & R Const.*, *supra*, págs. 361-362, 363.

[23] Art. 4006(c), 4 LPRA sec. 24(y)(c).

[24] 3 LPRA sec. 9675.

[25] *Cruz Rivera v. Mun. de Guaynabo*, 205 DPR 606, 611 (2020); *Torres Rivera v. Policía de PR*, 196 DPR 606, 625-626 (2016); *Mun. de San Juan v. J.C.A.*, 149 DPR 263, 279 (1999).

[26] *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 821 (2012); *Camacho Torres v. AAFET*, 168 DPR 66, 91 (2006).

[27] *López Borges v. Adm. Corrección*, 185 DPR 603, 611 (2012); *Federation des Ind. v. Ebel*, 172 DPR 615, 648 (2007).

[28] *López Borges v. Adm. Corrección*, *supra*, pág. 626.

expediente para sostener la conclusión de la agencia o si ésta actuó de forma arbitraria, caprichosa o ilegal[29]. El criterio rector es la razonabilidad de la actuación de la agencia recurrida[30]. Por ello, al momento de evaluar una determinación administrativa se debe considerar si: (1) el remedio concedido por la agencia fue apropiado; (2) la decisión de la agencia está sostenida en evidencia sustancial que obra en el expediente administrativo visto en su totalidad; y (3) las conclusiones de derecho fueron correctas[31].

Ahora bien, si la decisión del organismo administrativo no estuvo basada en evidencia sustancial; erró en la aplicación o interpretación de las leyes o los reglamentos que se le encomendó administrar; o actuó de manera irrazonable, arbitraria o ilegal, al realizar determinaciones carentes de una base racional; o si la actuación lesionó derechos constitucionales fundamentales, la deferencia debida a la agencia debe ceder[32].

Si una parte afectada por un dictamen administrativo impugna las determinaciones de hecho, esta tiene la obligación de derrotar con suficiente evidencia, que la determinación no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración[33]. De no identificarse y demostrarse esa otra prueba en el expediente administrativo, las determinaciones de hechos deben sostenerse por el tribunal revisor, pues el recurrente no ha logrado rebatir la presunción de corrección o legalidad[34].

Sobre las determinaciones de derecho, el Tribunal Supremo ha dicho que distinto a las determinaciones de hecho, el tribunal las puede revisar en todos sus aspectos, sin sujeción a norma o criterio

---

[29] *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99 (2023); *Vélez v. A.R.Pe.*, 167 DPR 684, 693 (2006).
[30] *Hernández, Álvarez v. Centro Unido*, 168 DPR 592, 614 (2006).
[31] *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35-36 (2018); *Pagán Santiago et al. v. ASR*, 185 DPR 341, 358 (2012).
[32] *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 744-745 (2012).
[33] *Íd.*; *Pereira Suárez v. Jta. Dir Cond.*, 182 DPR 485, 511 (2011); *Com. Seg. v. Real Legacy Assurance*, 179 DPR 692, 717 (2010); *Rebollo v. Yiyi Motors*, 161 DPR 69, 77 (2004).
[34] *O.E.G. v. Rodríguez*, 159 DPR 98, 118 (2003).

alguno. Sin embargo, esto no quiere decir que un foro apelativo pueda descartar las conclusiones y sustituir el criterio del ente administrativo por el suyo. En estos casos, también los tribunales apelativos les deben deferencia a los organismos administrativos[35].

**-D-**

Como es conocido, el organismo administrativo es el ente especializado, llamado a ejecutar la política pública promulgada en su ley habilitadora. Por tanto, los poderes de las agencias administrativas se limitan, específicamente, a aquellos conferidos por la Asamblea Legislativa[36].

En lo pertinente, el Artículo 1 de la ley habilitadora de la Oficina del Contralor del Estado Libre Asociado de Puerto Rico[37], dispone:

> [...]. La Oficina del Contralor gozará de la más plena autonomía administrativa, presupuestaria y fiscal que le permita, sin que se entienda como una limitación, ejercer la custodia y el control de sus fondos y propiedad pública; diseñar y establecer su propia organización fiscal y los sistemas y procedimientos de contabilidad para llevar a cabo sus transacciones financieras; preparar, solicitar, administrar y fiscalizar su presupuesto; y reprogramar los fondos asignados o economías de acuerdo a las prioridades de las funciones que lleva a cabo dicha Oficina, entre otros asuntos.

Asimismo, el Artículo 14 de la precitada ley establece que "[e]l contralor tendrá facultad para adoptar y promulgar las reglas y reglamentos no incompatibles con las leyes vigentes y la Constitución del Estado Libre Asociado de Puerto Rico, que sean necesarios para el mejor desempeño de sus funciones y tendrá su propio servicio legal. Dichas reglas y reglamentos tendrán fuerza de ley una vez sean promulgados"[38].

En conformidad con lo anterior, la Oficina del Contralor promulgó el Reglamento Número 10: *Reglamento para la Administración del Capital Humano de la Oficina del Contralor de*

---

[35] *Rebollo v. Yiyi Motors, supra,* pág. 77.
[36] *OCS v. CODEPOLA*, 202 DPR 842, 852 (2019).
[37] 2 LPRA sec. 71.
[38] 2 LPRA sec. 84.

*Puerto Rico*[39]. Dicho Reglamento tiene como propósito establecer la reglamentación interna para la administración del capital humano, que promueva los valores de la Oficina del Contralor.

El Título 16 del antedicho Reglamento, faculta al supervisor a cargo, tomar medidas correctivas o disciplinarias, que en su discreción y conforme al Reglamento, entienda aplicables o necesarias, cuando la conducta del empleado constituya una falta a las normas de comportamiento o incurra en desempeño deficiente. No obstante, el mismo Reglamento[40] establece una política de *disciplina progresiva* para la aplicación de medidas correctivas y disciplinarias a sus empleados. A esos efectos, dispone que "[e]stas medidas incluyen: amonestación verbal o escrita, reprimenda escrita, suspensión de empleo con cargo a licencia, suspensión de empleo y sueldo, suspensión sumaria, destitución o remoción"[41]. También contempla que, en circunstancias en que la conducta imputada sea de carácter grave que resulte lesivo a la seguridad, ambiente de trabajo o al funcionamiento de la Oficina, esta se reservará el derecho de obviar el esquema de *disciplina progresiva*.

En ese sentido, nuestro ordenamiento fomenta que la implementación de medidas correctivas o disciplinarias se apliquen de manera gradual. Pues, tiene como propósito sancionar, orientar y advertir al empleado sobre la conducta no deseada y las posibles consecuencias que podrían acarrear, de persistir con tal conducta[42]. Empero, el Tribunal Supremo ha expresado que "[s]olamente cuando la falta cometida sea de tal naturaleza o gravedad que amerite destitución podrá, por vía excepcional, obviarse la disciplina

---

[39] Los hechos del presente caso se remiten a la enmienda del 28 de junio de 2019, del Reglamento Número 10: *Reglamento para la Administración del Capital Humano de la Oficina del Contralor de Puerto Rico.*
[40] Título 16.2 del Reglamento Número 10: *Reglamento para la Administración del Capital Humano de la Oficina del Contralor de Puerto Rico.*
[41] *Íd.*
[42] *Feliciano Martes v. Sheraton,* 182 DPR 368 (2011); *COPR v. SPU,* 181 DPR 299 (2011); *Miranda Ayala v. Hosp. San Pablo,* 170 DPR 734 (2007).

progresiva"[43]. A esos efectos, una sola ofensa o primera falta es justa causa para imponerle a un empleado alguna medida disciplinaria más severa o drástica "si por su gravedad y su potencial de agravio pone en riesgo el orden, la seguridad o la eficiencia que constituyen el funcionamiento normal del establecimiento"[44].

### III.

Como cuestión de umbral atenderemos el primer error esbozado por la OCPR. Surge del tracto procesal que, el 5 de julio de 2023, notificada ese mismo día por correo electrónico, la Junta de Apelaciones declaró No Ha Lugar el recurso de *Apelación* presentado; esto, por entender que el apelante incurrió en un acto de insubordinación. Además, la Junta de Apelaciones modificó la medida disciplinaria impuesta por la OCPR, sustituyendo la suspensión de empleo y sueldo, por una amonestación verbal. Consecuentemente, ordenó a la OCPR eliminar del expediente personal del recurrido la suspensión de empleo y sueldo, así como restituir la cantidad de dinero que este dejó de devengar más las licencias acumuladas pertinentes.

Inconforme con el referido dictamen, el 17 de julio de 2023, la OCPR presentó *Reconsideración*[45] ante la Junta de Apelaciones. La Junta de Apelaciones, oportunamente, acogió la referida *Reconsideración* mediante *Resolución* del 18 de julio de 2023, notificada ese mismo día por correo electrónico. Siendo así, conforme a la Secc. 3.15 de la LPAU, *supra*, a partir del **17 de julio de 2023**, fecha en que se presentó la *Reconsideración*, la Junta de Apelaciones tenía noventa (90) días para emitir su dictamen. El término de noventa (90) días no fue prorrogado y venció el **15 de octubre de 2023**.

---

[43] *Cruz Rivera v. Mun. de Guaynabo, supra*, pág. 614.
[44] *Íd.*, pág. 620, citando a *Delgado Zayas v. Hosp. Int. Med. Avanzada*, 137 DPR 643, 649 (1994).
[45] Apéndice del *Recurso de Revisión Administrativa*, págs. 11- 27.

No obstante, la Junta de Apelaciones dictó *Resolución en Reconsideración* el **1 de noviembre de 2023**, notificada ese mismo día por correo electrónico. Ante ello, la Junta de Apelaciones no actuó dentro del periodo de noventa (90) días, por lo que perdió jurisdicción sobre la reconsideración y su dictamen carece de efecto jurídico alguno. En consecuencia, el primer error fue cometido y la *Reconsideración* presentada por la OCPR, no tuvo efecto interruptor alguno, *ni* los dictámenes posteriores, entiéndase, *la Resolución Final atendiendo solicitud de Reconsideración,* la *Reconsideración a la Concurrencia y Disidencia Parcial.* Así pues, el término para recurrir en alzada comenzó a transcurrir el 15 de octubre de 2023.

Es decir, el término de treinta (30) días para presentar el recurso de epígrafe vencía el **14 de noviembre de 2023, y ese último día la parte recurrente presentó su recurso ante este foro.** Apuntalamos que, la parte recurrente compareció dentro del término establecido ante este foro apelativo conforme a lo dispuesto por la Sección 4.2 de la LPAU, *supra*. Consecuentemente, este foro intermedio tiene jurisdicción para atender el recurso.

Referente al segundo señalamiento de error, la parte recurrente impugna varias determinaciones de hechos de la *Resolución* del 5 de julio de 2023, a saber: párrafos 11, 12 y 17; además, el último párrafo de la conclusión de derecho y el voto concurrente y disidente parcial relacionado a la apreciación de la prueba testifical. No obstante, este segundo error señalado es uno insustancial a la controversia; y, colegimos que es inmeritorio e innecesaria su discusión debido a que el mismo se tornó académico cuando la OCPR solicitó la desestimación y el señor Cardona Sáez se allanó a la petición del retiro de las causas de acción sobre violación del debido proceso de ley y represalia[46].

---
[46] Apéndice IX a la pág. 156.

El tercer error incide en la apreciación de la prueba presentada. Veamos. Surge del legajo apelativo que, el señor Cardona Sáez presentó apelación el 12 de julio de 2021 ante la Junta de Apelaciones. En síntesis, reclamó que se dejara sin efecto su suspensión de tres (3) días laborables, se acreditase a sus respectivos balances las licencias del tiempo descontado, se determinara que la conducta no constituía insubordinación, que la OCPR violó su derecho a representación legal e incurrió en represalia y se decretara que el procedimiento disciplinario es nulo[47]. La Junta de Apelaciones determinó que el señor Cardona Sáez incurrió en un acto de insubordinación, no obstante, estableció que la suspensión de empleo y sueldo de tres (3) días impuesta por la OCPR debe ser modificada por una amonestación verbal.

Como mencionáramos previamente, surge de la transcripción de la prueba oral que, la OCPR solicitó la desestimación de las reclamaciones relacionadas con violación del debido proceso de ley y represalia[48]y, ante esta petición, el señor Cardona Sáez se allanó y retiró dichas causas de acción. Por tanto, quedó pendiente para la adjudicación de la Junta de Apelaciones lo siguiente: que se dejase sin efecto la suspensión de tres (3) días laborables; se acreditase a sus respectivos balances las licencias del tiempo descontado; y si el señor Cardona Sáez incurrió en actos de insubordinación.

La Junta de Apelaciones se pronunció y determinó que el señor Cardona Sáez incurrió en insubordinación, más, sin embargo, redujo la medida disciplinaria impuesta.

Si bien la Contralora posee la facultad de imponer las medidas correctivas y disciplinarias que, a su discreción, entienda aplicables, estas deben ajustarse a lo establecido en los reglamentos que promulga. A esos efectos, el propio Reglamento Número 10 de la

---

[47] Apéndice VI.
[48] Apéndice IX a la pág. 156.

OCPR dispone que se utilizará la *disciplina progresiva* en la imposición de las medidas disciplinarias y correctivas. Ante ello, la OCPR no cumplió con las disposiciones de su Reglamento al imponerle al recurrido una medida disciplinaria tan severa como lo es la suspensión de empleo y sueldo.

Aunque la OCPR sostiene que la severidad de la medida disciplinaria impuesta responde a los reiterados actos de indisciplina por parte del recurrido, la parte recurrente no presentó prueba sobre ello. Surge únicamente del Memorando-OCP-CH-21-559[49] que, en dos (2) ocasiones anteriores el recurrido recibió una reprimenda y una amonestación escrita; sin embargo, reiteramos que, la OCPR no incluyó en el legajo apelativo las alegadas sanciones previas, así pues, este foro no pudo evaluar, constatar y determinar si dichos incidentes constituían actos de insubordinación, de modo que nos permitiera movernos a una determinación distinta.

Tras examinar minuciosamente el expediente apelativo, tampoco surge que la Contralora se encontrara bajo alguna de las circunstancias que ameritaran prescindir del esquema de *disciplina progresiva*. Pues, si bien el recurrido incurrió en insubordinación, *su actuación no fue una de tal magnitud que pusiera en riesgo el orden, la seguridad o la eficiencia que constituyen el funcionamiento normal de la Oficina*[50].

En conclusión, la Junta de Apelaciones no cometió el error señalado por la OCPR. Por lo tanto, no erró al determinar que lo que correspondía en el presente caso era una amonestación verbal y no una suspensión de empleo y sueldo. La determinación de la Junta de Apelaciones es esencialmente correcta.

Concluimos que, aun reconociendo que los foros apelativos aceptamos como correctas las determinaciones de hechos de las

---

[49] Véase Apéndice del *Recurso de Revisión Administrativa*, pág. 42.
[50] *Cruz Rivera v. Mun. de Guaynabo, supra*, pág. 620.

agencias administrativas, al igual que su apreciación de los testigos y el valor probatorio de la prueba presentada en sala, esta deferencia obedece a que las tareas de adjudicar credibilidad y determinar lo que realmente ocurrió, depende en gran medida de la exposición del juez o la jueza a la prueba presentada. No obstante, la deferencia cede, cuando la totalidad de la evidencia analizada nos convence de que las conclusiones de la Junta de Apelaciones confligen con el balance más racional, justiciero y jurídico de toda la prueba recibida.

**IV.**

Por los fundamentos que anteceden, **confirmamos** la determinación apelada, emitida por la Junta de Apelaciones de la Oficina del Contralor.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones