ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| **ERIC RODRÍGUEZ CRUZ**<br><br>Recurrido<br><br>v.<br><br>**CARIBBEAN RESTAURANTS, LLC**<br><br>Peticionario | KLCE202400898 | **CERTIORARI** procedente del Tribunal de Primera Instancia, Sala Superior de **Aguada**<br><br>Caso Núm.: **AU2022CV00086**<br><br>Sobre: Despido Injustificado |

Panel integrado por su presidenta, la Jueza Ortiz Flores, la Jueza Aldebol Mora y la Jueza Boria Vizcarrondo.

Boria Vizcarrondo, Jueza Ponente.

### SENTENCIA EN RECONSIDERACIÓN

En San Juan, Puerto Rico, a 6 de diciembre de 2024.

Examinada la *Moción de Reconsideración* presentada por Caribbean Restaurants, LLC (Caribbean Restaurants o peticionaria), reconsideramos nuestra *Resolución* de 22 de octubre de 2024.

**I**

El 5 de agosto de 2022, Eric Rodríguez Cruz (Rodríguez Cruz o recurrido) radicó una *Demanda Enmendada* sobre despido injustificado al amparo de la Ley Núm. 80 del 30 de mayo de 1976, *infra*, y una acción de discrimen por edad bajo la Ley Núm. 100, *infra*, contra Caribbean Restaurants.[1] Por su parte, el 24 de agosto de 2022, Caribbean Restaurants presentó su *Contestación a*

---

[1] Apéndice de *Petición de Certiorari*, págs. 7-11. La *Demanda* original fue presentada el 18 de febrero de 2022 pero solo contenía la acción de despido injustificado al amparo de la Ley 80 del 30 de mayo de 1976, *infra*.

*Demanda Enmendada* en la que negó las alegaciones presentadas en su contra y levantó sus defensas afirmativas.[2]

Así las cosas, luego de varios trámites procesales, Caribbean Restaurants sometió una *Solicitud de Sentencia Sumaria* el 11 de abril de 2024.[3] En síntesis, planteó que no existían hechos materiales en controversia en cuanto a que Rodríguez Cruz no demostró que su despido fue injustificado y que haya ocurrido discrimen. En ese sentido, señaló que el despido del señor Rodríguez Cruz fue como resultado de una investigación que reflejó que incurrió en faltas a las políticas y normas de Caribbean Rastaurants; esto debido a que realizó actos de hostigamiento sexual contra dos (2) empleadas subordinadas y poseía un extenso historial que reflejaba múltiples amonestaciones y suspensiones. Asimismo, argumentó que la prueba demostró que el señor Rodríguez Cruz no probó un caso *prima facie* de discrimen por razón de edad. Además, Caribbean Restaurants acompañó la *Solicitud de Sentencia Sumaria* con evidencia documental y la transcripción de deposiciones.

De otra parte, el 30 de abril de 2024, el señor Rodríguez Cruz ripostó la solicitud de sentencia sumaria con su *Oposición a Moción de Sentencia Sumaria.*[4] Mediante esta, sostuvo que existían controversias de hechos que impedían que se dispusiera el caso sumariamente. La referida oposición fue sometida con evidencia documental y la transcripción de deposiciones.

El 22 de mayo de 2024, Caribbean Restaurants sometió una *Réplica a "Oposición a Moción de Sentencia Sumaria".*[5] En esta, señaló que el señor Rodríguez Cruz admitió en su oposición a la solicitud de sentencia sumaria que Caribbean Restaurants atendió

---

[2] *Íd.*, págs. 12-17.
[3] *Íd.*, págs. 18-309.
[4] *Íd.*, págs. 314-751.
[5] *Íd.*, págs. 756-818.

e investigó las quejas internas presentadas en contra del primero. Además, expresó que el señor Rodríguez Cruz no controvirtió el hecho de que las investigaciones realizadas por Caribbean Restaurants reflejaron que este violentó las normas y políticas de hostigamiento sexual de la empresa y que tenía un extenso historial disciplinario. Igualmente, apuntó que el señor Rodríguez Cruz no demostró un caso *prima facie* de discrimen por razón de edad, ya que Caribbean Restaurants tenía una razón no discriminatoria para justificar su despido. Por su parte, el señor Rodríguez Cruz presentó una *Dúplica a Réplica a Oposición a Moción de Sentencia Sumaria* en donde reiteró que existían controversias de hecho que requerían ser dilucidadas en juicio.[6]

Así las cosas, el Tribunal de Primera Instancia, Sala Superior de Aguada (TPI) emitió una *Resolución*, el 17 de julio de 2024, notificada al siguiente día, mediante la cual declaró No Ha Lugar la *Solicitud de Sentencia Sumaria* presentada por Caribbean Restaurants.[7] El TPI determinó que los siguientes hechos no estaban en controversia:

> 1. El 29 de agosto de 1982 el señor Eric A. Rodríguez Cruz comenzó como empleado de Caribbean Restaurants hasta su despido para el 10 de febrero de 2022.
>
> 2. El puesto del señor Eric A. Rodríguez Cruz al ser despedido era el de gerente del restaurante de Burger King ubicado en Moca.
>
> 3. El señor Eric A. Rodríguez Cruz conocía que debía cumplir con todas las normas y reglamentos de Caribbean Restaurants.
>
> 4. El señor Eric A. Rodríguez Cruz, mientras laboró con Caribbean Restaurants, recibió el Manual de Empleados; el cual contiene las normas y políticas de la empresa.
>
> 5. Al recibir el Manual de Empleados, el señor Eric A. Rodríguez Cruz firmó un acuse de recibo mediante el cual hizo constar que leyó, entendió y se comprometió a cumplir con el mismo.

---

[6] *Íd.*, págs. 819-826.
[7] *Íd.*, págs. 832-840.

6. El Manual de Empleados de Caribbean Restaurants dispone que existir una violación a las normas de su empresa "la compañía podrá tomar medidas disciplinarias que crea pertinentes, lo que puede conllevar hasta el despido".

7. El señor Eric A. Rodríguez Cruz ocupó distintas posiciones en Caribbean Restaurants siendo la última gerente en propiedad.

8. El señor Eric A. Rodríguez Cruz ocupó la posición de gerente por aproximadamente por 17 años.

9. Para el año 2019, el señor Eric A. Rodríguez Cruz comenzó a ocupar la posición de gerente en propiedad en el restaurante Burger King de Moca, hasta su eventual despido para el 10 de febrero de 2022.

10. El señor Eric A. Rodríguez Cruz, como parte de sus funciones, podía ser trasladado de restaurante para atender las necesidades de la empresa; esto, según su experiencia, puesto y conocimiento.

11. El señor Eric A. Rodríguez Cruz, como parte de sus funciones tenía la responsabilidad de velar el cumplimiento y amonestar a los empleados del restaurante que violaran las normas y políticas de la empresa.

12. El señor Eric A. Rodríguez Cruz tenía conocimiento y recibió copia sobre la política de Caribbean Restaurants que prohíbe el discrimen y el hostigamiento sexual en el empleo.

13. Caribbean Restaurants le ofreció al señor Eric A. Rodríguez Cruz, dos veces en el año, seminarios y orientaciones sobre la política de discrimen y hostigamiento sexual en el empleo.

14. Caribbean Restaurante tiene como norma prohibir "observar un comportamiento lascivo, inmoral o indecente en las facilidades de la Compañía".

15. Caribbean Restaurante también tiene como norma prohibir "discriminar, hostigar o acosar sexualmente a un asociado, invitado o suplidor".

16. La política de Caribbean Restaurants en cuanto al hostigamiento sexual, indica lo siguiente:

Hostigamiento Sexual: implica cualquier avance sexual no deseado, solicitudes de favores sexuales o conducta o comentario de naturaleza sexual. Algunos ejemplos de la conducta que se considerará hostigamiento sexual:

Proposiciones sexuales no deseadas. Esto incluye, pero no se limita, al contacto físico de carácter sexual que otra persona considera inaceptable. Solicitudes o demandas de favores sexuales. Esto incluye una solicitud sutil de favores o expectativas obvias,

presiones o solicitudes de cualquier tipo de favor sexual acompañadas por una promesa implícita o directa, o trato preferencial o consecuencia negativa con relación a condiciones de empleo.

Hacer uso de lenguaje abusivo ya sea verbalmente, por escrito o por mecanismo electrónico, o hacer bromas con contenido sexual, y que otra persona considera inaceptable. Esto incluye comentar sobre el cuerpo o la apariencia de una persona cuando dichos comentarios van más allá de una mera cortesía; hacer chistes de mal gusto que son claramente no deseados y que otros consideran ofensivos; o cualquier otro comentario, insinuación o acción de carácter ofensivo o sexual que pueda insultar a otros.

Llevar a cabo algún tipo de conducta sexual no deseada que interfiera irrazonablemente con el desempeño de las labores de otro. Una interferencia irrazonable es aquella que ocasiona una reducción en la productividad de la persona o en el tiempo disponible en tareas que le corresponden.

Crear un ambiente de trabajo que es intimidante, hostil u ofensivo debido a las conversaciones, sugestiones, solicitudes, demandas, contactos físicos, atenciones o piropos repetidos de carácter sexual y que no son deseados.

Las interacciones normales, corteses y placenteras entre los asociados, que son bienvenidas para ambas partes, no se consideran hostigamiento sexual.

18. Caribbean Restaurants prohíbe el hostigamiento sexual en el empleo. A tales efectos, su Manual de Empleado dispone lo siguiente:

Caribbean Restaurants, LLC se compromete a mantener un lugar de trabajo donde los asociados estén libres de perturbación y el malestar que pueda crear el hostigamiento sexual o de otra naturaleza ilegal. Tod[a] proposición repetida o no deseada de carácter verbal o sexual, comentario degradante explícitamente sexual o insinuación sexual o insinuación sexual hecha por alguien en el trabajo, que es ofensiva u objetable para el (la) que lo recibe, está absolutamente prohibido. Igualmente, queda totalmente prohibido otros tipos de hostigamiento (ver inciso 3.4), maltratos o abusos de cualquiera otra naturaleza, incluyendo, pero sin limitarse, a aquellos basados en el embarazo, orientación sexual, raza, color, edad, ideas religiosas, origen social o nacional, condición social, impedimento físico o mental, ideas políticas, matrimonio del asociado con otro asociado de la Compañía, servicio militar o por ser veterano de las fuerzas armadas de los Estados Unidos de América o de la Guardia Nacional (en adelante colectivamente designado como "hostigamiento de otra naturaleza"). Esta norma también aplica a la conducta que deben desplegar

nuestros asociados en su trato con invitados y suplidores en el curso de su empleo.

19. El Manual del Empleado de Caribbean Restaurants dispone que el empleado que incurra en hostigamiento sexual podrá ser despedido de su empleo.

20. Caribbean Restaurants contrató a la señora Coralis del Mar Feliciano Pérez para el puesto de asociada general a tiempo parcial en el restaurante de Moca.

21. El señor Eric A. Rodríguez Cruz era el supervisor directo de la señora Coralis del Mar Feliciano Pérez.

22. El 4 de febrero de 2022, la señora Coralis del Mar Feliciano Pérez les informó a los asistentes de gerente, la señora Genevie Arroyo y el señor Heriberto Torres, sobre un incidente que tuvo con el señor Eric A. Rodríguez Cruz Rodríguez y cómo esa situación le hizo sentir. Dicho incidente ocurrió el 2 de febrero de 2022 según se desprende de un video de seguridad.

23. La señora Genevie Arroyo le solicitó a la señora Coralis del Mar Feliciano Pérez que redactara una carta resumiendo el incidente para notificarlo al Departamento de Recursos Humanos.

24. La gerente de área, la señora Sheily Delgado, le comunicó al Vicepresidente de Recursos Humanos, el señor Manuel Marrero Miranda, el incidente que la señora Coralis del Mar Feliciano Pérez le notificó a la asistente de gerente, la señora Genevie Arroyo.

25. El 7 de febrero de 2022, el señor Manuel Marrero Miranda instruyó al representante de Recursos Humano, señor Osvaldo Rivera, a realizar una investigación interna sobre el incidente que la señora Coralis del Mar Feliciano Pérez le notificó a la asistente de gerente, la señora Genevie Arroyo.

26. El 8 de febrero de 2022, el señor Manuel Marrero Miranda efectuó una investigación interna en la cual entrevistó alrededor de quince asociados del restaurante de Moca.

27. El 10 de febrero de 2022, el señor Eric A. Rodríguez Cruz Rodríguez fue despedido de su empleo.

No obstante lo anterior, el TPI concluyó que no podía dictar sentencia sumaria en el caso de autos puesto que existían las siguientes controversias de hechos:

Los hechos referentes a la alegación de hostigamiento sexual contra el señor Eric A. Rodríguez Cruz, incluyendo los actos que se desprenden de los videos presentados y los testimonios de las partes involucradas;

Las circunstancias y motivaciones del despido del señor Eric A. Rodríguez Cruz, incluyendo posibles motivos discriminatorios basados en la edad; y

Los hechos referentes a la investigación realizada por Caribbean Restaurants, LLC, en relación con las alegaciones de hostigamiento sexual.

Inconforme con la *Resolución* del TPI, el 16 de agosto de 2024, Caribbean Restaurants acudió ante este foro apelativo imputándole al TPI la comisión de los siguientes errores:

PRIMERO: EL TPI ERRÓ AL NO DESESTIMAR SUMARIAMENTE LA DEMANDA ENMENDADA ANTE LAS ADMISIONES DEL RECURRIDO Y LA EVIDENCIA QUE DEMUESTRA JUSTA CAUSA PARA EL DESPIDO Y LA INEXISTENCIA DE DISCRIMEN POR RAZÓN DE EDAD.

SEGUNDO: EL TPI ERRÓ AL NO INCLUIR EN SUS DETERMINACIONES DE HECHOS TODOS LOS HECHOS PROPUESTOS POR LA PETICIONARIA QUE ADMITIÓ EL RECURRIDO Y CONSIGNAR CONTROVERSIAS DE HECHOS.

El 22 de octubre de 2024, emitimos una *Resolución* en el caso de epígrafe donde denegamos expedir el recurso de *certiorari* y confirmamos la determinación del foro primario.[8] En esa ocasión concluimos que, a pesar de que el caso versaba sobre una acción de despido injustificado, había la necesidad de resolver si ocurrió hostigamiento sexual, puesto que fue el hostigamiento sexual lo que provocó el alegado despido justificado.

Aun inconforme, el 15 de octubre de 2024, Caribbean Restaurants sometió ante este Tribunal de Apelaciones una *Moción de Reconsideración.* El 23 de octubre de 2024, el señor Rodríguez Cruz presentó su *Oposición a Moción de Reconsideración y Desglose de Moción de Reconsideración.* Igualmente, Caribbean Restaurants presentó su *Oposición da Solicitud de Desglose de Moción de Reconsideración.* Con el beneficio de la comparecencia de las partes, procedemos a resolver.

---

[8] Véase *Resolución* del 22 de octubre de 2024 en el caso KLAN202400898.

**II.**

**A.**

El auto de *certiorari* es aquel vehículo procesal extraordinario, de carácter discrecional, que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); Véase, además a *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009); *García v. Padró*, 165 DPR 324, 334 (2005). Para este recurso discrecional, existen unos parámetros que sirven de guía al momento de decidir si debemos expedir o denegar el auto. De esta forma, el asunto que se nos plantee en el recurso de *certiorari* debe tener cabida dentro de alguna de las materias reconocidas en la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1.

La Regla 52.1 de Procedimiento Civil, *supra*, dispone que un recurso de *certiorari* sólo será expedido cuando se recurra de una resolución u orden bajo las Reglas 56 (Remedios Provisionales) y 57 (Injunctions) de Procedimiento Civil o una denegatoria de una moción de carácter dispositivo. Además de lo anterior, y a modo de excepción, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias cuando se recurra de decisiones sobre: 1) la admisibilidad de testigos de hecho o de peritos esenciales; 2) asuntos relativos a privilegios probatorios; 3) anotaciones de rebeldía; 4) casos de relaciones de familia; 5) casos que revistan interés público; o, 6) cualquier otra situación en la cual esperar la apelación constituiría un fracaso irremediable de la justicia.

Una vez presentado un recurso de *certiorari*, el Tribunal de Apelaciones deberá ejercer su discreción y evaluar la petición tomando en consideración los criterios enumerados en la Regla 40 del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40. Deberá evaluar:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Aun así, cuando el Tribunal de Apelaciones determina, en su sana discreción, denegar la expedición de un recurso de *certiorari*, no tiene que fundamentar su determinación. Regla 52.1 de Procedimiento Civil, *supra.*

## B.

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V., R. 36, regula todo lo relacionado a la moción de sentencia sumaria. Dicho mecanismo procesal es utilizado en aquellos litigios que no presentan controversias genuinas de hechos materiales y que, por consiguiente, la celebración de un juicio en su fondo no es necesaria en la medida que solo resta por dirimir determinadas controversias de derecho. *Acevedo y otros v. Depto. Hacienda y otros*, 212 DPR 335 (2023); *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 334 (2021); *León Torres v. Rivera Lebrón*, 204 DPR 20, 41 (2020); *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018). Se considera un hecho material aquel que puede afectar el resultado de la reclamación de acuerdo al derecho sustantivo aplicable. *Bobé et al. V. UBS Financial Services*, 198 DPR 6, 20 (2017). Asimismo, "resulta

esencial que de la prueba que acompaña la solicitud de sentencia sumaria surja de manera preponderante que no existe controversia sobre los hechos medulares del caso." *Cruz, López v. Casa Bella y otros*, 2024 TSPR 47; 213 DPR __ (2024).

El propósito que se persigue con el mecanismo de la sentencia sumaria es que los pleitos civiles sean solucionados de forma justa, rápida y económica. *SLG Fernández-Bernal v. RAD-MAN et al.*, *supra*, pág. 335; *León Torres v. Rivera Lebrón, supra*, pág. 43. Para ello, la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3, establece cual será el contenido y los requisitos de forma que deberán observarse tanto en la solicitud de sentencia sumaria que inste la parte promovente, como en la oposición que pueda presentar la parte promovida. Véase, también, *León Torres v. Rivera Lebrón, supra*, pág. 43.

La Regla 36.3 (e) de Procedimiento Civil, *supra*, dispone que la sentencia sumaria solicitada será dictada inmediatamente:

> "si de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que como cuestión de derecho el tribunal debe dictar sentencia sumaria a favor de la parte promovente." Véase, además, *Rodríguez García v. UCA, supra*; *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664 (2018).

Como regla general, una moción de sentencia sumaria no procederá cuando: (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derecho, no proceda. *Fernández-Bernal v. RAD-MAN et al., supra,* págs. 335-336; *S.L.G. Szendrey-Ramos v. Consejo Titulares*, 184 DPR 133, 167 (2011).

De igual forma, es también norma reiterada que el mecanismo de sentencia sumaria no es el adecuado cuando existen controversias de hechos materiales sobre elementos subjetivos de intención, propósitos mentales o negligencia, o cuando la credibilidad es un factor esencial y está en disputa. *Velázquez Ortiz v. Mun. De Humacao,* 197 DPR 656 (2017); *Const. José Carro v. Mun. Dorado,* 186 DPR 113, 129 (2012); *Ramos Pérez v. Univisión,* 178 DPR 200, 219 (2010). Sin embargo, **el Tribunal Supremo ha validado el mecanismo de la sentencia sumaria, en reclamaciones que requieren elementos subjetivos o de intención, cuando hay una clara falta de controversia en cuanto a los hechos materiales**. *Ramos Perez v. Univisión, supra,* pág. 219; *Velázquez Ortiz v. Mun. de Humacao, supra,* pág. 663. "Es decir, nuestra jurisprudencia es clara en que **no importa lo complejo que sea un pleito, si de una Moción de Sentencia Sumaria bien fundamentada surge que no existe controversia real en cuanto a los hechos materiales del caso, puede dictarse Sentencia sumariamente**." (Énfasis nuestro) *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 112 (2015). Véase, también, *Guías para la Interpretación de la Legislación Laboral,* 1ra ed., Departamento del Trabajo y Recursos Humanos, 8 de mayo de 2019, https://trabajo.pr.gov/guias_legislacion_laboral.asp, págs. 192-193.[9]

La Regla 36.4 de Procedimiento Civil, *supra,* regula lo concerniente a cuando no se dicta una sentencia sumaria en su totalidad, sobre la misma expone:

---

[9] "Claramente, la jurisprudencia que interpreta las antiguas Reglas de Procedimiento Civil y que limita excesivamente el uso de la sentencia sumaria quedó atrás después de Ramos Pérez v. Univisión y su progenie. Incluso, un examen de la actual Regla 36 de Procedimiento Civil revela que no se codificaron materias o tipos de controversias que no puedan ser objeto de una disposición sumaria. Así pues, la sentencia sumaria es un mecanismo más que proveen las Reglas de Procedimiento Civil para resolver oportunamente los reclamos de las partes sin necesidad de ocupar un espacio en el calendario judicial para celebrar un juicio ordinario*." Guías para la Interpretación de la Legislación Laboral, supra,* págs. 192-193.

> Si en virtud de una moción presentada bajo las disposiciones de esta regla no se dicta sentencia sobre la totalidad del pleito, no se concede todo el remedio solicitado o se deniega la moción, y es necesario celebrar juicio, será obligatorio que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, y hasta qué extremo la cuantía de los daños u otra reparación no está en controversia, ordenando los procedimientos ulteriores que sean justos en el pleito, incluso una vista evidenciaria limitada a los asuntos en controversia. Al celebrarse el juicio, se considerarán probados los hechos así especificados y se procederá de conformidad.
> A base de las determinaciones realizadas en virtud de esta regla, el tribunal dictará los correspondientes remedios, si alguno.

Es importante puntualizar que, al momento de atender una solicitud de revisión de sentencia sumaria, los foros apelativos estamos llamados a "examinar el expediente de novo y verificar que las partes cumplieron con las exigencias" pautadas en las Reglas de Procedimiento Civil. *Fernández-Bernal v. RAD-MAN et al.*, *supra*, pág. 338 que cita a *Rivera Matos et al. v. Triple-S et al.*, 204 DPR 1010, 1025 (2020). En ese proceder, y de encontrar que los hechos materiales realmente están incontrovertidos, nos corresponde entonces revisar si el foro primario aplicó correctamente el Derecho. *Fernández-Bernal v. RAD-MAN et al.*, *supra*; *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019).

### C.

La Ley Núm. Ley Núm. 80 de 30 de mayo de 1976 (Ley Núm. 80), según enmendada, conocida como la *Ley Sobre Despidos Injustificados*, 29 LPRA sec. 185a, establece una prohibición en contra del despido de empleados sin justa causa. Dicho estatuto es de naturaleza reparadora, por lo que debe interpretarse libremente a favor del trabajador. *Ruiz Mattei v. Com. Equip. Fin., Inc.*, 2024 TSPR 68. Asimismo, mediante esta ley, el patrono pagará al empleado despedido una indemnización conocida como "mesada",

además del sueldo devengado hasta la fecha del despido. *Indulac v. Unión*, 207 DPR 279, 298 (2021).

El Artículo 2 de la Ley Núm. 80, *supra*, contempla varios escenarios que constituyen justa causa, los cuales son atribuibles a la conducta del empleado o al cierre, reorganización o reducción de la empresa. Dispone el Artículo 2 de la Ley Núm. 80, *supra*, que:

Se entenderá por justa causa para el despido de un empleado aquella que no esté motivada por razones legalmente prohibidas y que no sea producto del mero capricho del patrono. Además, se entenderá por justa causa aquellas razones que afecten el buen y normal funcionamiento de un establecimiento que incluyen, entre otras, las siguientes:

(a) Que el empleado incurra en un patrón de conducta impropia o desordenada.

(b) Que el empleado incurra en un patrón de desempeño deficiente, ineficiente, insatisfactorio, pobre, tardío o negligente. Esto incluye incumplir con normas y estándares de calidad y seguridad del patrono, baja productividad, falta de competencia o habilidad para realizar el trabajo a niveles razonables requeridos por el patrono y quejas repetidas de los clientes del patrono.

**(c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.**

(d) Cierre total, temporero o parcial de las operaciones del establecimiento. En aquellos casos en que el patrono posea más de una oficina, fábrica, sucursal o planta, el cierre total, temporero o parcial de las operaciones de cualquiera de estos establecimientos donde labora el empleado despedido, constituirá justa causa para el despido a tenor con este Artículo.

(e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.

(f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido o con el propósito de aumentar la competitividad o productividad del establecimiento.

No se considerará justa causa para el despido de un empleado la colaboración o expresiones hechas por éste, relacionadas con el negocio de su patrono, en una investigación ante cualquier foro administrativo, judicial o legislativo en Puerto Rico, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada según la ley. En este último caso, el empleado así despedido tendrá derecho, además de cualquier otra adjudicación que correspondiere, a que se ordene su

inmediata restitución en el empleo y a que se le compense por una cantidad igual a los salarios y beneficios dejados de percibir desde la fecha del despido hasta que un tribunal ordene la reposición en el empleo. (Énfasis nuestro) 29 LPRA sec. 185b.

Cónsono con lo anterior, el Tribunal Supremo ha "reiterado, en un sinnúmero de ocasiones, que bajo las disposiciones de la referida Ley Núm. 80, *supra*, constituye justa causa para el despido aquella que tiene su origen, no ya en el libre arbitrio o capricho del patrono, sino en aquella vinculada a la ordenada marcha y normal funcionamiento de la empresa en cuestión". *Díaz v. Wyndham Hotel Corp.*, 155 DPR 364, 376-377 (2001).

Ahora bien, los escenarios dispuestos en el Artículo 2 de la Ley Núm. 80, *supra*, no son los únicos que justifican el despido de un empleado. Por tanto, pueden surgir otras instancias en donde se justifique la cesantía. *Srio. del Trabajo v. I.T.T.*, 108 DPR 536, 542 (1979). En ese sentido, **la violación de un reglamento establecido por el patrono para evitar hostigamiento sexual es constitutivo de justa causa para el despido**. *Delgado Zayas v. Hosp. Int. Med. Avanzada*, 137 DPR 643, 659 (1994).

De igual modo, **reiteradas violaciones a las normas de las compañías constituyen justa causa para el despido**. *Báez García v. Cooper Labs., Inc.*, 120 DPR 145, 154 (1987). No obstante, el Tribunal Supremo ha interpretado que al amparo de la Ley Núm. 80, *supra*, **una sola ofensa puede constituir despido**. *Indulac v. Unión, supra*, pág. 300. Ahora bien:

> Toda vez que la falta única se sanciona con despido sólo por excepción [...].
> ........
> La falta o acto aislado que d[e] lugar a despido del empleado en primera ofensa ha de ser de tal seriedad o naturaleza que revele una actitud o un detalle de su carácter, tan lesivo a la paz y al buen orden de la empresa, que constituiría imprudencia esperar su reiteración para separarlo del establecimiento. *Srio. del Trabajo v. I.T.T., supra*, págs. 543–544.

**D.**

El hostigamiento sexual en el empleo está proscrito en Puerto Rico por la Ley Núm. 17 de 22 de abril de 1988 (Ley Núm. 17), según enmendada, conocida como la *Ley Para Prohibir el Hostigamiento Sexual en el Empleo*, 29 LPRA sec. 155 *et seq.* De este modo, el Gobierno de Puerto Rico estableció como política pública que "el hostigamiento sexual en el empleo es una forma de discrimen por razón de sexo y como tal constituye una práctica ilegal e indeseable que atenta contra el principio constitucional establecido de que la dignidad del ser humano es inviolable." Artículo 1 de la Ley Núm. 17, 29 LPRA sec. 155; Art. II, Sec. 1, Const. PR, LPRA, Tomo 1.

De otra parte, el Artículo 3 de la Ley Núm. 17 define hostigamiento sexual como:

> El hostigamiento sexual en el empleo consiste en cualquier tipo de acercamiento sexual no deseado requerimientos de favores sexuales y cualquier otra conducta verbal o física de naturaleza sexual o que sea reproducida utilizando cualquier medio de comunicación incluyendo, pero sin limitarse, al uso de herramientas de multimedios a través de la red cibernética o por cualquier medio electrónico, cuando se da una o más de las siguientes circunstancias:
>
> (a) Cuando el someterse a dicha conducta se convierte de forma implícita o explícita en un término o condición del empleo de una persona.
>
> (b) Cuando el sometimiento o rechazo a dicha conducta por parte de la persona se convierte en fundamento para la toma de decisiones en el empleo o respecto del empleo que afectan a esa persona.
>
> (c) Cuando esa conducta tiene el efecto o propósito de interferir de manera irrazonable con el desempeño del trabajo de esa persona o cuando crea un ambiente de trabajo intimidante hostil u ofensivo. 29 LPRA sec. 155b.

El hostigamiento sexual tiene dos modalidades. Los incisos (a) y (b) del Artículo 3 se refieren a la modalidad de hostigamiento equivalente o *quid pro quo*, mientras que el inciso (c) se refiere a la modalidad de ambiente hostil. *Delgado Zayas v. Hosp. Int. Med.*

*Avanzada, supra,* pág. 653. Sobre esto, el Tribunal Supremo ha señalado que:

> La primera modalidad se concreta cuando 'el sometimiento o el rechazo de los avances o requerimientos sexuales se toma como fundamento para afectar beneficios tangibles en el empleo'. Rodríguez Meléndez v. Sup. Amigo, Inc., supra, pág. 132. A su vez, la modalidad de hostigamiento sexual por ambiente hostil ocurre 'cuando la conducta sexual para con un individuo tiene el efecto de interferir irrazonablemente con el desempeño de su trabajo o de crear en el mismo un ambiente intimidante, hostil u ofensivo.' (Citas omitidas). *Rosa Maisonet v. ASEM,* 192 DPR 368, 382 (2015).

Para determinar si una conducta es constitutiva de hostigamiento sexual, se deberá evaluar la totalidad de las circunstancias y los hechos particulares de cada caso. Artículo 4 de la Ley Núm. 17, 29 LPRA sec. 155c. El patrono deberá evaluar factores como: la naturaleza de la acción, la frecuencia e intensidad, el contexto en que ocurre, su duración, y la conducta y circunstancias personales de la víctima. C. Zeno Santiago y otros, *Tratado de Derecho del Trabajo,* San Juan, SITUM, 2014, T. II, pág.201.

Asimismo, **los patronos deben mantener el lugar de trabajo libre de hostigamiento sexual** y exponer una política clara de hostigamiento sexual ante los supervisores y empleados para garantizar un espacio seguro. Artículo 10 de la Ley Núm. 17, 29 LPRA sec. 155i. En ese sentido, la Ley Núm. 17, *supra,* **también les exige a los patronos tomar acción inmediata ante cualquier caso de hostigamiento sexual para corregir la situación**. Artículo 6 de la Ley de la Ley Núm. 17, 29 LPRA sec. 155e. "Una acción inmediata y apropiada es aquella que razonablemente terminará sin demora los actos de hostigamiento sexual y evitará su repetición de manera efectiva." *Albino v. Ángel Martínez, Inc.,* 171 DPR 457, 475 (2007). Según la Ley Núm. 17, *supra,* dichas acciones deben incluir, pero no limitarse, a lo siguiente:

(a) Expresar claramente a sus supervisores y empleados que el patrono tiene una política enérgica contra el hostigamiento sexual en el empleo.
(b) Poner en práctica los métodos necesarios para crear conciencia y dar a conocer la prohibición del hostigamiento sexual en el empleo.
(c) Dar suficiente publicidad en el lugar de trabajo, para los aspirantes a empleo, de los derechos y protección que se les confieren y otorgan bajo esta ley[...]
(d) Establecer un procedimiento interno adecuado y efectivo para atender querellas de hostigamiento sexual. Artículo 6 de la Ley de la Ley Núm. 17, *supra*, Zeno Santiago y otros, *op. cit.*, pág. 202.

Debemos aclarar que la Ley Núm. 17, *supra*, solo les ofrece unas guías mínimas a los patronos para que, a su discreción, adopten una política efectiva en contra del hostigamiento. "**Corresponde a cada patrono, a la luz de las circunstancias particulares, tomar las medidas cautelares que sean necesarias para evitar con efectividad el hostigamiento sexual en sus talleres de trabajo.**" (Énfasis nuestro) *Delgado Zayas v. Hosp. Int. Med. Avanzada, supra*, pág. 658; *Rosa Maisonet v. ASEM, supra*, pág. 383.

Así pues, "la política pública del Gobierno de Puerto Rico contra el hostigamiento sexual en el ámbito obrero-patronal es clara y **le corresponde a cada patrono tomar las medidas necesarias para cumplir cabalmente con ese mandato so pena de sanciones.**" (Énfasis nuestro) *Rosa Maisonet v. ASEM, supra*, pág. 383.

Por último, y en lo pertinente al caso ante nuestra consideración, el Tribunal Supremo de Puerto Rico ha señalado que **un patrono puede ir más allá de los parámetros establecidos en la Ley Núm. 17, *supra*, al definir lo que constituye hostigamiento sexual**. *Rosa Maisonet v. ASEM*, supra. Igualmente, en el caso de *Rosa Maisonet v. ASEM*, el Alto Foro resolvió que:

**[L]a Ley Núm. 17, *supra*, no le exige a un patrono probar un caso *prima facie* de hostigamiento sexual a su empleado para poder despedirlo como sanción por incumplir con las normas de hostigamiento sexual de su empresa. Lo que sí exige esta ley a todo**

**patrono es el deber de realizar actos afirmativos para desalentar el hostigamiento sexual en el ámbito laboral y promover activamente una política de prevención**. En este ejercicio, la Ley Núm. 17, *supra,* no impide que un patrono opte por circunscribirse a las guías mínimas enumeradas en la ley *o que elija ser más riguroso y proactivo en la adopción de medidas para combatir efectivamente el hostigamiento sexual en su taller de trabajo. Ello, siempre y cuando las normas y las sanciones correspondientes contenidas en dichos Reglamentos sean razonables.* (Énfasis en el original en bastardillas y Énfasis Nuestro en negrillas). *Íd.*, pág. 393.

## E.

Por imperativo constitucional, se prohíbe el discrimen por razón de edad. Art. II, Sec. 1, Const. ELA PR, LPRA, Tomo 1. Asimismo, nuestra constitución establece que "[t]anto las leyes como el sistema de instrucción pública encarnarán estos principios de esencial igualdad humana". *Íd.*

En el ámbito laboral, la Asamblea Legislativa mediante la aprobación de la Ley Núm.100 de 30 de junio de 1959 (Ley Núm. 100), según enmendada, conocida como la *Ley Antidiscrimen de Puerto Rico*, 29 LPRA sec. 146 *et seq*, le brindó a la clase obrera del país una protección estatutaria contra cualquier discrimen, incluyendo la edad, por parte de los patronos. *Mestres Dosal v. Dosal Escandón*, 173 DPR 62, 67 (2008). Así pues, el Artículo 1 de la Ley Núm. 100*, supra*, establece que:

> Todo patrono que despida, suspenda o discrimine contra un empleado suyo en relación a su sueldo, salario, jornal o compensación, términos, categorías, condiciones o privilegios de su trabajo, o que deje de emplear o rehúse emplear o reemplear a una persona, o limite o clasifique sus empleados en cualquier forma que tienda a privar a una persona de oportunidades de empleo o que afecten su status de empleado, por razón de edad, según ésta se define más adelante, raza, color, sexo, orientación sexual, identidad de género, origen social o nacional, condición social, afiliación política, o ideas políticas o religiosas, o por ser víctima o ser percibida como víctima de violencia doméstica, agresión sexual o acecho, o por ser militar, ex-militar, servir o haber servido en las Fuerzas Armadas de los Estados Unidos o por ostentar la condición de veterano del empleado o solicitante de empleo, o por tener peinados protectores y texturas de cabello que regularmente se

asocian con identidades de raza y origen nacional particulares[...] 29 LPRA sec. 146.

En lo pertinente al caso ante nuestra consideración, el primer párrafo del Artículo 3 de la Ley Núm. 100, *supra*, establecía una presunción controvertible de discrimen a favor del empleado.[10] Véase, *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209 (2015); *Ramírez Ferrer v. Conagra Foods PR*, 175 DPR 799 (2009); *Díaz v. Wyndham Hotel Corp.*, *supra*, pág. 384; *Ibáñez v. Molinos de P. R., Inc.*, 114 DPR 42 (1983). Esta presunción tenía el efecto de establecer un esquema probatorio, bajo el cual el peso de la prueba recaía en el patrono. *Íd.* Véase, además, Regla 110 de Evidencia, 32 LPRA Ap. VI, R. 110.[11]

Ahora bien, mediante la Ley Núm. 4-2017 (Ley Núm. 4), según enmendada, conocida como *Ley de Transformación y Flexibilidad Laboral*, 29 LPRA sec. 121, se enmendaron varias leyes laborales, entre estas, la Ley Núm. 100, *supra*. En particular, se enmendó el Artículo 3 de la Ley Núm. 100, *supra*, a los fines, entre otros, de

---

[10] Previo a las enmiendas introducidas mediante la Ley Núm. 4-2017, *supra*, el Artículo 3 de la Ley Núm. 100 de 30 de junio de 1959, *supra*, disponía lo siguiente:

"Se presumirá que cualquiera de los actos mencionados en las secciones precedentes fue cometido en violación de las secs. 146 a 151 de este título, cuando el mismo haya sido realizado sin justa causa. Esta presunción será de carácter controvertible.

No se presume que el patrono estaba enterado de la situación personal de algún empleado o empleada en los casos de discrimen a las víctimas o presuntas víctimas de violencia doméstica, agresión sexual o acecho, a no ser que en efecto el patrono hubiera estado en la posición de conocerlo.

El patrono deberá realizar los ajustes o acomodos razonables necesarios en el lugar de trabajo para proteger a sus empleados y empleadas de un posible agresor(a) una vez este haya sido avisado sobre la potencialidad de que ocurra una situación peligrosa. El no hacerlo se presumirá como una conducta discriminatoria.".

[11] En lo pertinente, la Regla 110 de Evidencia, 32 LPRA Ap VI, R. 110, dispone lo siguiente:

"La juzgadora o el juzgador de hechos deberá evaluar la evidencia presentada con el propósito de determinar cuáles hechos han quedado establecidos o demostrados, con sujeción a los principios siguientes:

(a) El peso de la prueba recae sobre la parte que resultaría vencida de no presentarse evidencia por alguna de las partes.

(b) La obligación de presentar evidencia primeramente recae sobre la parte que sostiene la afirmativa en el asunto en controversia.

[...]."

"armonizar nuestra legislación laboral con la legislación federal análoga." *Exposición de Motivos* de la Ley Núm. 4, *supra.* Específicamente, el Artículo 6.3 de la Ley Núm. 4, *supra,* eliminó el primer párrafo del Artículo 3 de la Ley Núm. 100, 29 LPRA sec. 148. De esta forma, se dejó sin efecto la presunción de discrimen que establecía la Ley Núm. 100, *supra.* Así pues, el Artículo 3 de la Ley Núm. 100, *supra,* vigente dispone que:

> No se presume que el patrono estaba enterado de la situación personal de algún(a) empleado(a) en los casos de discrimen a las víctimas o presuntas víctimas de violencia doméstica, agresión sexual o acecho, a no ser que en efecto el patrono hubiera estado en la posición de conocerlo.

> El patrono deberá realizar los ajustes o acomodos razonables necesarios en el lugar de trabajo para proteger a sus empleados de un posible agresor una vez éste haya sido avisado sobre la potencialidad de que ocurra una situación peligrosa. El no hacerlo se presumirá como una conducta discriminatoria.

Importante, además, el Artículo 6.2 de la Ley Núm. 4, estableció una norma hermenéutica al disponer lo siguiente:

> Al aplicarse las disposiciones de cualquier ley de discrimen o represalia en el empleo, se reconocerá lo dispuesto en la legislación y reglamentación federal, al igual que las interpretaciones judiciales de las mismas de aquellos tribunales con jurisdicción en Puerto Rico, a los fines de asegurar interpretaciones consistentes en cuanto a términos o disposiciones similares, salvo que las disposiciones de la legislación local requieran una interpretación distinta. 29 LPRA 123a.

Por otra parte, el *Title VII of the Civil Rights Act of 1964*, 42 USC sec. 2000e *et seq.,* es una ley federal que prohíbe la discriminación laboral por motivos de raza, color, religión, sexo y origen nacional. En *McDonnell Douglas Corp. v. Green*, 411 US 792 (1973), el Tribunal Supremo federal resolvió que en reclamaciones bajo el *Title VII of the Civil Rights Act of 1964, supra,* cuando no hay prueba directa de discrimen, el empleado demandante tiene que inicialmente establecer un caso *prima facie* de discrimen. El Tribunal Supremo Federal señaló lo siguiente:

> The complainant in a Title VII trial must carry the initial

burden under the statute of establishing a *prima facie* case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. *McDonnell Douglas Corp. v. Green, supra*, pág. 802.

Para establecer un caso *prima facie* de discrimen, el demandante tiene que alegar hechos suficientes para establecer: (1) que hubo un despido o acto perjudicial; (2) que éste se realizó sin justa causa, y (3) algún hecho base que lo ubique dentro de la modalidad de discrimen bajo la cual se reclama. *Ramos Pérez v. Univisión, supra*, pág. 222. Cumplidos estos requisitos, surge un caso *prima facie* de discrimen, cuyo efecto es trasladar el peso de la prueba al patrono. *Íd.* En ese sentido, el caso *prima facie* de discrimen constituye una especie de presunción. *Board of Trustees v. Sweeney*, 439 US 24 (1978).

Una vez se establece el referido caso *prima facie* de discrimen, se transfiere al demandado únicamente el peso de producir y/o presentar evidencia, no el de probar, que la acción o decisión de empleo fue llevada a cabo obedeciendo a una razón legítima, no discriminatoria, y válida de negocio. *Íd.*; *McDonnell Douglas Corp. v. Green, supra.* Logrado esto, se desvanece la presunción que obraba en contra del demandado, y entonces el demandante tiene una última oportunidad de convencer y persuadir al juzgador de hechos de que, a pesar de que el patrono derrotó el caso *prima facie*, la razón que este último articuló en su defensa, fue un mero pretexto detrás de su intención y ánimo de discriminar, y que realmente la decisión patronal fue tomada por motivos exclusivamente discriminatorios. *Íd.*

**III.**

En el caso ante nuestra consideración, la parte peticionaria presentó dos (2) señalamientos de error. En esencia, en su primer señalamiento de error, plantea que el TPI incidió al no desestimar por la vía sumaria la *Demanda Enmendada*, cuando en este caso no existía controversia a los efectos de que el despido fue justificado y que no se discriminó por razón de edad. De otra parte, en su segundo señalamiento de error, señala la parte peticionaria que el TPI erró al no incluir admisiones de la parte recurrida en sus determinaciones de hechos. Por estar íntimamente relacionados, discutiremos los errores en conjunto.

Como cuestión de umbral precisa advertir que la determinación recurrida es un asunto comprendido dentro de las materias que podemos revisar de conformidad con la Regla 52.1 de las de Procedimiento Civil, *supra*. Asimismo, a la luz de las disposiciones de la Regla 40 de nuestro Reglamento, *supra*, entendemos que están presentes algunos de los criterios allí dispuestos para que proceda nuestra intervención con la misma.

Igualmente, aclaramos que este Tribunal tiene ante su consideración un caso de despido injustificado al amparo de la Ley Núm. 80, *supra*, por lo que nos corresponde determinar si la peticionaria despidió al recurrido conforme a derecho, según establece el referido estatuto y su jurisprudencia interpretativa. Este Tribunal no tiene ante su consideración un caso bajo la Ley Núm. 17, *supra*, que prohíbe el hostigamiento sexual en el empleo. Por consiguiente, nuestra función revisora solo se limitará a evaluar la acción de despido injustificado de un empleado que incurrió en conducta constitutiva de hostigamiento sexual prohibida por los reglamentos y las normas de su lugar de empleo. Aclarado lo anterior, procedemos a resolver.

Como bien señalamos previamente, procede dictar sentencia sumaria en los casos en que no se presenten controversias genuinas de hechos materiales y que, por consiguiente, la celebración de un juicio en su fondo no es necesario, puesto que solo resta dirimir determinadas controversias de derecho. *Acevedo y otros v. Depto. Hacienda y otros*, *supra*. Sin embargo, el Tribunal Supremo de Puerto Rico ha señalado que el mecanismo de sentencia sumaria no es el adecuado cuando existen controversias de hechos materiales sobre elementos subjetivos de intención, propósitos mentales o negligencia, o cuando la credibilidad es un factor esencial y está en disputa. Velázquez *Ortiz v. Mun. De Humacao*, *supra*. Ahora bien, **el Alto Foro también ha validado este mecanismo, en reclamaciones que requieren elementos subjetivos o de intención, cuando hay una clara falta de controversia en cuanto a los hechos materiales**. *Ramos Perez v. Univisión, supra; Velázquez Ortiz v. Mun. de Humacao, supra; Meléndez González et al. v. M. Cuebas, supra.*

Así pues, examinada de *novo* la moción de sentencia sumaria presentada por la parte peticionaria, así como la moción en oposición presentada por el recurrido, concluimos que las determinaciones de hechos formuladas por el TPI encuentran apoyo en la prueba que obra en el expediente, por lo que las acogemos por referencia y las hacemos formar parte de nuestro dictamen.

En el caso de autos, como bien señaló el TPI, no existe controversia sobre que la parte peticionaria cuenta con normas que prohíben el hostigamiento sexual en el empleo; que el recurrido recibió dichas normas y las conocía; que el recurrido recibió seminarios y orientaciones sobre la política de discrimen y hostigamiento sexual en el empleo; que una violación a las normas de la compañía puede conllevar despido; y que el empleado que incurra en hostigamiento sexual podrá ser despedido de su empleo.

Ahora bien, debemos examinar de *novo* los hechos que el foro primario encontró en controversia. Es decir, las alegaciones de hostigamiento sexual, las cuales incluyen los actos que se desprenden de los videos y los testimonios de las partes involucradas; las circunstancias y motivaciones del despido, incluyendo el alegado discrimen por edad; y hechos referentes a la investigación realizada por la parte peticionaria.

La Ley Núm. 80, *supra*, castiga al patrono que despide injustificadamente a un empleado. Sin embargo, **se entenderá por justa causa para el despido de un empleado las reiteradas violaciones a las reglas y reglamentos para el funcionamiento del establecimiento**. Artículo 2 de la Ley Núm. 80, *supra; Báez García v. Cooper Labs., Inc., supra.* Incluso, una sola ofensa puede constituir despido. *Indulac v. Unión, supra.* Así pues, **la violación de un reglamento establecido por el patrono para evitar hostigamiento sexual es constitutivo de justa causa para el despido**. *Delgado Zayas v. Hosp. Int. Med. Avanzada, supra.*

Por otra parte, en Puerto Rico existe una clara política pública contra el hostigamiento sexual en el empleo. Ley Núm. 17, *supra*. Ante esto, **los patronos tienen el deber de mantener el lugar de trabajo libre de hostigamiento sexual y exponer una política clara en contra de este para garantizar un espacio seguro**. *Íd.* Además, **los patronos deben tomar acción inmediata ante cualquier caso de hostigamiento sexual para corregir la situación**. *Íd; Delgado Zayas v. Hosp. Int. Med. Avanzada, supra.* Asimismo, la Ley Núm. 17, *supra*, solo provee unas guías mínimas, por lo que les confiere a los patronos discreción para adoptar las normas que estime necesarias para cumplir con el deber que le impone dicho estatuto. *Rosa Maisonet v. ASEM, supra.* Por consiguiente, **al definir lo que constituye hostigamiento sexual,**

**un patrono puede ir más allá de los parámetros que establece la Ley Núm. 17**, *supra. Íd.*

En este caso, no está en controversia que la parte recurrida fue despedida el 10 de febrero de 2022 por violar la política de discrimen, acoso, hostigamiento en el empleo y política anti-represalia.[12] Asimismo, tampoco está en controversia que el despido surgió luego de una investigación realizada por la peticionaria.[13] Se desprende del expediente que como parte de la investigación realizada, **la peticionaria entrevistó a quince (15)**[14] **asociados del restaurante y evaluó el historial de la parte recurrida**. Según los documentos que obran en el expediente, no existe controversia a los efectos de que el historial de la parte recurrida **reflejó un patrón de violaciones a las normas de la compañía**. Es decir, el recurrido recibió un total de dieciocho (18) amonestaciones – incluyendo suspensiones – por infringir múltiples normas de la compañía durante su tiempo como empleado.[15] Igualmente, **es un hecho incontrovertido que el recurrido fue suspendido y amonestado en varias ocasiones por violentar las normas y políticas de la empresa**.[16] Entre estas violaciones se encuentran un incidente ocurrido el 29 de septiembre de 2003, en donde el recurrido fue suspendido por violentar las normas de hostigamiento sexual.[17]

De igual modo, es un hecho incontrovertido que, para tomar la determinación del despido, la parte peticionaria analizó dos (2) videos con el propósito de constatar las quejas presentadas por las empleadas Coralis del Mar Feliciano Pérez (Coralis Feliciano) y Krystal Acevedo Cortés (Krystal Acevedo).[18] No está en controversia que los videos reflejan que hubo contacto físico por parte del

---

[12] Apéndice de *Petición de Certiorari.*, pág.122.
[13] *Íd.*
[14] *Íd.*, pág. 836. Véase, además, determinación de hecho #26 del TPI.
[15] *Íd.*, págs. 97, 99 116-145, 278, 558, 578-579, 601, 607.
[16] *Íd.*
[17] *Íd.*, pág. 136.
[18] *Íd.*, págs. 122, 98-102, 279-280.

recurrido hacia ambas empleadas.[19] Además, no está en controversia que Coralis Feliciano se sintió acosada e incómoda como resultado de las acciones de la parte del recurrido.[20] De hecho, debido a esto, Coralis Feliciano acudió ante los asistentes de los gerentes para reportar el incidente.[21]

El recurrido señala que los videos solo demuestran que este tocó la mano de Coralis Feliciano sin querer, y en el caso de Krystal Acevedo, solo le tocó la espalda para darle una instrucción. Añade, además, que tampoco surgió un patrón y que solo se trataba de un evento aislado. Contrario a lo argumentado por la parte recurrida, debemos recordar que el patrono no tiene que demostrar un caso *prima facie* de hostigamiento cuando se trata de una acción de despido injustificado. La política de hostigamiento sexual de la peticionaria es clara al establecer que se considerará hostigamiento sexual, entre otras acciones, el "**contacto físico de carácter sexual que otra persona considera inaceptable**."

Nuevamente, aquí no está en controversia que hubo contacto físico y que el mismo no fue deseado. Incluso, tampoco está en controversia que existía un historial disciplinario de la recurrida sobre violaciones a las normas y políticas de la empresa que fue tomado en consideración para el despido.[22] Incluso, se desprende del expediente que el recurrido también hacia comentarios inaceptables de índole sexual sobre el cuerpo de las empleadas.[23] Por consiguiente, no cabe duda de que la parte peticionaria, en su deber de cumplir con la política pública de mantener el lugar de trabajo libre de hostigamiento sexual, tomó la acción correspondiente de despedir al recurrido de su empleo por el incumplimiento reiterado de sus reglamentos y normas.

---

[19] *Íd.*, págs. 390, 261-262.
[20] *Íd.*, págs. 247-248, 394, 402
[21] Véase determinaciones de hecho del TPI.
[22] Apéndice de *Petición de Certiorari.*, pág. 122.
[23] *Íd.*, págs. 122, 247-248, 261-262, 264, 267.

Por último, nos parece anacrónico el argumento del recurrido en su oposición a la moción de reconsideración cuando señala que "el que ve los videos debe concluir que no ocurrió hostigamiento sexual porque, si fuera así, todos hemos cometido hostigamiento sexual."[24] El contacto físico sin consentimiento y no deseado es constitutivo de hostigamiento sexual. Distinto hubiera sido si el recurrido hubiera tenido el consentimiento de las empleadas para el contacto físico, pero ese no es el caso. Además, un solo acto es suficiente para que se constituya el hostigamiento sexual. No importa si el contacto fue por menos o más de un segundo, por un "simple roce", si no fue deseado o consentido, nos podemos encontrar ante un claro caso de hostigamiento sexual.

Por otro lado, en cuanto a la controversia de discrimen, resolvemos que el recurrido no probó un caso *prima facie* de discrimen por razón de edad, puesto que la compañía no tomó acción perjudicial en su contra. Para establecer un caso *prima facie* de discrimen, la parte recurrida tenía que alegar hechos suficientes para establecer: (1) que hubo un despido o acto perjudicial; (2) que éste se realizó sin justa causa, y (3) algún hecho base que lo ubique dentro de la modalidad de discrimen bajo la cual se reclama. *Ramos Pérez v. Univisión, supra.*

En este caso no está en controversia que el señor Rodríguez Cruz fue el gerente del restaurante de Moca durante la fecha de los incidentes de hostigamiento, y que fue sustituido por el señor Ángel Hernández Badillo (Hernández Badillo) luego de su despido.[25] El señor Hernández Badillo, era gerente y tenía más de veinte (20) años de servicio en la empresa al momento del despido del señor

---

[24] Véase *Oposición a Moción de Reconsideración y Desglose de Moción de Reconsideración*, pág. 2.
[25] Véase Entrada Núm. 54, Anejo 17, pág. 4 del expediente digital del caso AU2022CV00086 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

Rodríguez Cruz.[26] Asimismo, el propio recurrido señaló que era común el traslado de los gerentes y que él fue trasladado en varias ocasiones.[27]

Además, el expediente está huérfano de evidencia que demuestre que el señor Rodríguez Cruz haya recibido comentarios relacionados a su edad durante su tiempo en la compañía. Por tanto, este carece de fundamentos en derecho para sostener una reclamación de discrimen por razón de edad. También, añadimos que no existe controversia en cuanto a que la parte peticionaria basó el despido del recurrido en los actos de hostigamiento y en su extenso historial disciplinario por el incumplimiento de las normas y políticas, el cual refleja múltiples amonestaciones y suspensiones. Por ello, Caribbean Restaurants actuó con justa causa al terminar el empleo del señor Rodríguez Cruz, por lo cual no es responsable de discrimen alguno.

En conclusión, luego de reexaminado el expediente del caso de autos, reconsideramos nuestra *Resolución* para resolver que no existe controversia en cuando a que Caribbean Restaurantes tuvo justa causa para despedir al señor Rodríguez Cruz por violentar las normas y políticas de la empresa. Igualmente, concluimos que el señor Rodríguez Cruz no probó un caso *prima facie* de despido injustificado. Además, declaramos No Ha Lugar el desglose de la *Moción de Reconsideración*.

**IV.**

Por los fundamentos antes expuestos, reconsideramos la *Resolución* del 22 de octubre de 2024, dictada por este Tribunal. En consecuencia, expedimos el auto de *certiorari*, revocamos la *Sentencia* recurrida y declaramos Ha Lugar la *Solicitud de Sentencia Sumaria*.

---

[26] Apéndice de *Petición de Certiorari*, págs. 76-77.
[27] *Íd.*, págs. 82, 541.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

**La Jueza Ortiz Flores no reconsideraría**, por lo que **disiente de la** *Sentencia en Reconsideración* suscrita por las Juezas Aldebol Mora y Boria Vizcarrondo, y **se sostiene en lo dispuesto en la** *Resolución final* **emitida por el Panel el 27 de septiembre de 2024**.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones